(No. 41253.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* RAYMOND L. ANDRUS, Appellant.

*Opinion filed January 29, 1969.*

STEPHEN D. GAY, of Peoria, appointed by the court, for appellant.

ROBERT E. MANNING, JR., State's Attorney, of Peoria, and (JAY H. JANSSEN, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The only issue raised on this appeal is whether any facts were established in defendant's post-conviction hearing which, if presented to the trial court at the time of his plea of guilty, would have raised a *bona fide* doubt as to his sanity and required a hearing as to his competency to enter a plea.

On April 13, 1966, defendant Raymond L. Andrus was indicted in the circuit court of Peoria County for attempted burglary. The following day he was arraigned and given copies of two purported oral confessions which had been reduced to writing, and the public defender was appointed to represent him. On May 26, 1966, he entered a plea of not guilty. On June 21, 1966, he was granted leave to withdraw his plea of not guilty, he entered a plea of guilty, and he was sentenced to the penitentiary for a term of 2 to 5 years.

Before accepting the plea of guilty, the trial court carefully and extensively advised defendant of his rights, the nature of the charge and the consequences of the plea. He was specifically advised of his right to trial by jury, of his right to trial by the court, of his right to be confronted by witnesses against him and to cross-examine those witnesses, and of his right to have compulsory process issued to secure the presence of any witnesses he might desire. After each of these rights was explained, he specifically waived each one. The court then explained the charge and asked him if he had read it and if he understood the charge, to which he answered "yes". The court then asked if the public defender's representation had been satisfactory, to which he replied "yes", and if the representation had been satisfactory from the time he first met the public defender up to and including that moment, to which he answered "yes". In another series of questions the court asked if any person had made any threats or promises that had influenced his plea or if he had been subjected to any cruel or inhuman treat-

ment since he became involved in the difficulty, to which he replied "no". The court also asked if he had been treated with respect and he said he had. The possible sentence was explained to defendant, which he said he understood, and the court accepted the plea. Defendant was then asked if there was anything he wanted to tell the court and he said "no". After the sentence was imposed, the court counseled defendant on rehabilitating himself for his return to society and defendant thanked the court.

About six months later defendant filed his petition for a post-conviction hearing. It alleges that he was interrogated without the assistance of counsel and was not warned of his right to counsel; that he was in jail for 108 days during which time he was denied medical care; that he was without counsel until the day of his trial when the public defender was appointed; that he only saw his counsel for 5 minutes before he was sentenced; that he was represented by incompetent counsel; that the trial court judged the admissibility of his confession; that he was mentally incompetent to stand trial; and that he had notified his attorney, the sheriff's office and the Federal Bureau of Investigation that he was mentally ill. An attorney was appointed to represent defendant and his post-conviction hearing was held in September 29, 1967.

The only issue presented at the hearing was whether at the time of entry of the guilty plea there were facts present which, had they been known to the trial court, would have raised a *bona fide* doubt as to the defendant's sanity. The appropriate means for raising this issue is a petition in the nature of a writ of error *coram nobis* pursuant to section 72 of the Civil Practice Act. (*People* v. *McLain,* 37 Ill.2d 173; *McDowell* v. *People,* 33 Ill.2d 121; *People* v. *Anderson,* 31 Ill.2d 262; *Costas* v. *People,* 9 Ill.2d 534.) The hearing was conducted as one under section 72 and we shall so consider it in this review of the proceedings.

Defendant was the only witness in his own behalf and

he told of his background prior to his plea of guilty. He said that when he was in the fourth grade, he was constantly stealing and giving the stolen articles back or throwing them away. The school nurse took him to the Beverly Foundation which he described as a foundation for mentally ill or retarded children. On cross-examination he said he stayed there one night and was sent back to school. While he said this "problem" (apparently stealing for no reason) continued, he gave no account of any irrational behavior or mental treatment until he was sent to the "Arkansas State Hospital' for the criminally insane" in 1961. On cross-examination he stated that he was serving a three-year sentence in Arkansas and when asked about the Arkansas confinement, he said, "I don't remember too much about Arkansas." Upon his release from the Arkansas institution, he said he was sent to the Alton State Hospital, a mental hospital. In cross-examination he said that he ran away from the hospital twice and was finally conditionally released to his father, that he did not know how long he was at Alton and that there was never any attempt to keep him at the hospital for any length of time.

Defendant also testified that a doctor at the Alton Hospital had prescribed Thorazine for him and that he took 50 C.C.'s of this drug daily from the time of his release from the hospital in 1963 until he was arrested. He said he was not furnished this drug during the 108 days between the time of his arrest and the day he pleaded guilty. He said the drug is a type of relaxant and that every day he was in jail without it he had violent headaches, vomited, had no appetite and lost weight. He stated that he told the officers in charge (whose names he could not remember) "3 and 4 times a day, every day" of his condition, he wrote to his wife and his mother and father, he wrote to the sheriff twice, he told an agent of the Federal Bureau of Investigation and he told his attorney of his condition, but he never received any medical assistance. On cross-examination de-

fendant said that he had not been given Thorazine during the 16 months between the day he pleaded guilty and the day of his post-conviction hearing and that the only medical treatment he requested and received while in prison was for an ulcer and colds.

Defendant further testified that he "repeatedly" discussed his mental illness with his attorney, and on at least three occasions asked his attorney that he be given a sanity hearing; that because of his mental illness he did not understand the proceedings; and that he was suffering from headaches and the lack of Thorazine at the time he pleaded guilty. He finally stated that his attorney told him that if he pleaded "guilty" he would be given a light sentence of 2 to 5 years but that if he pleaded "not guilty" he would be put in the "Chester Hospital for the Criminally Insane" for the rest of his natural life. Faced with this alternative defendant said he answered the court's questions the way his attorney told him to answer. On cross-examination he admitted that he never asked the prosecution or the court for a sanity hearing but he persisted in the assertion that he pleaded guilty because he was faced with the alternative of 2 to 5 years for a guilty plea or life in a mental institution for a not-guilty plea.

The public defender who represented defendant testified for the People. He had been practicing law for 20 years and had been the public defender for 8 years. He said that he conferred with defendant 4 to 6 times before the plea of guilty was entered and that defendant never asked him to file a petition for a competency hearing. The attorney stated that he felt defendant understood the nature of the proceedings and was able to cooperate with him and that defendant had discussed "every bit" of his activity in the affair. He said defendant told him he had been at the Alton State Hospital; that he asked defendant if he felt that had anything to do with the offense and he said "no". He further stated that when "a defendant is able to cooperate

with me and tells me consistently the same set of facts and there is no variation from those set of facts as to what occurred during the commission of an offense, and it does not in any way mislead me, and I feel I can competently represent him to see that he gets a fair trial, and he cooperates with me and understands the nature of the charge, I feel no reason to ask that he be examined for a sanity hearing." He denied that defendant had told him he was sick and needed the relaxant drug and further stated, "Well, I might tell you, he always seemed pretty relaxed to me. He didn't appear to be agitated, or under any particular anxiety."

The attorney also denied that he had told defendant he had a choice of pleading guilty and taking a 2-to-5-year sentence or pleading not guilty and going to a mental hospital for life. He testified that he discussed the nature of a sanity hearing and what it would entail prior to the time the not-guilty plea was entered on May 6, 1966. He said defendant did not want a sanity hearing because he knew it might entail his being sent to the Security Hospital at Chester until he was adjudicated to be sane and then returned for the purpose of standing trial.

Almost all of defendant's testimony which is pertinent to the issue of whether there was a *bona fide* doubt as to his competence to enter a guilty plea was controverted by his own statements at the time he entered the plea and by the later testimony of his attorney. The only new facts which were not so controverted were that he served part of his three-year sentence in Arkansas at a mental institution and that he had spent a short time at the Alton State Hospital some 3 years before he entered the guilty plea.

The record made in this post-conviction hearing falls far short of the showing we found sufficient in *People* v. *McLain*, 37 Ill.2d 173, to raise a *bona fide* doubt of the defendant's sanity at the time he pleaded guilty. This defendant's claim of insanity at the time he pleaded guilty is based

upon self-serving and unsupported statements which we have held are not sufficient to create a *bona fide* doubt. *People* v. *Pridgen,* 37 Ill.2d 295; *People* v. *Lego,* 32 Ill.2d 76.

We have carefully examined the entire record and believe the trial court did not err in holding there were no new facts established which would have raised a *bona fide* doubt of defendant's competence to enter the plea of guilty. The judgment of the circuit court of Peoria County is accordingly affirmed.

*Judgment affirmed.*