# IN THE SUPREME COURT OF TENNESSEE
## AT  NASHVILLE
### February 10, 2016 Session

## CLARK D. FRAZIER v. STATE OF TENNESSEE

**Appeal from the Court of Criminal Appeals**
**Circuit Court for Robertson County**
**No. 06-0350     John H. Gasaway, III, Judge**

_____

**No. M2014-02374-SC-R11-ECN – Filed July 7, 2016**

_____

We granted permission to appeal in this case to determine whether a criminal defendant who pleads guilty may later seek to overturn his plea via a petition for writ of error coram nobis filed pursuant to Tennessee Code Annotated section 40-26-105. Although this Court held in Wlodarz v. State, 361 S.W.3d 490 (Tenn. 2012), that guilty pleas may be subject to a collateral attack via a petition for writ of error coram nobis, we now overturn that decision. We hold that the statute setting forth the remedy of error coram nobis in criminal matters does not encompass its application to guilty pleas. Accordingly, we affirm the judgment of the Court of Criminal Appeals on the separate grounds stated herein.

### Tenn. R. App. P. 11; Judgment of the
### Court of Criminal Appeals Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CORNELIA A. CLARK and HOLLY KIRBY, JJ., joined. SHARON G. LEE, C.J., filed a dissenting opinion.

Jonathan A. Garner, Springfield, Tennessee, for the appellant, Clark D. Frazier.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Andrew C. Coulam, Assistant Attorney General; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney, for the appellee, the State of Tennessee.

## OPINION

## Factual and Procedural History

This matter began in 2004 when Clark Derrick Frazier, the Petitioner, stabbed to death Rosario Salas Angel. The Petitioner was charged with first degree murder. In March 2007, the Petitioner pled guilty to second degree murder and was sentenced to twenty-five years in prison. The Petitioner filed a petition for post-conviction relief, which was denied. See Frazier v. State, No. M2008-01303-CCA-R3-PC, 2009 WL 1272278, at *1 (Tenn. Crim. App. May 5, 2009), perm. appeal denied (Tenn. Aug. 31, 2009).

On June 15, 2011, the Petitioner filed the instant petition for writ of error coram nobis claiming that he is entitled to a new trial on the basis of newly discovered evidence. After an evidentiary hearing, the trial court denied relief. On direct appeal, the Court of Criminal Appeals affirmed. See Frazier v. State, No. M2014-02374-CCA-R3-ECN, 2015 WL 4040383, at *5 (Tenn. Crim. App. July 1, 2015), perm. app. granted (Tenn. Oct. 15, 2015). We granted the Petitioner's application for permission to appeal in order to revisit the issue of whether a criminal defendant who pleads guilty may later attack that plea by seeking error coram nobis relief under Tennessee Code Annotated section 40-26-105.

## Analysis

Initially, we note that neither the United States Constitution nor the Tennessee Constitution provides a criminal defendant with a constitutional right to error coram nobis relief. See United States v. Morgan, 346 U.S. 502, 506 (1954) (recognizing that a federal court's power to grant coram nobis relief arises from the "all-writs section of the Judicial Code" and making no reference to the federal constitution); State v. Mixon, 983 S.W.2d 661, 666-68 (Tenn. 1999) (tracing the historical common-law and statutory origins of error coram nobis and its availability in Tennessee). Rather, in Tennessee, the availability of error coram nobis relief is governed solely by statute.

Our statute setting forth the parameters for seeking a writ of error coram nobis in criminal matters provides as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been *litigated on the trial* of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to *present certain evidence at the proper time*, a writ

of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were *litigated at the trial* if the judge determines that such evidence may have resulted in a different judgment, had it been presented at *the trial*.

Tenn. Code Ann. § 40-26-105(b) (2012) (emphases added) ("the coram nobis statute"). The decision to grant or deny a petition for writ of error coram nobis on the merits rests within the trial court's sound discretion. Harris v. State, 301 S.W.3d 141, 144 (Tenn. 2010) (citing State v. Vasques, 221 S.W.3d 514, 527-28 (Tenn. 2007)).

In 2012, in a three-to-two decision, this Court concluded that the coram nobis statute could be utilized by a criminal defendant who had pled guilty. Wlodarz v. State, 361 S.W.3d 490, 503-04 (Tenn. 2012). Justice Koch, joined by Justice Clark, disagreed with this holding. Id. at 507 (Koch, J., concurring in result). We accepted this appeal to reexamine the availability of the error coram nobis statute as a procedural mechanism to collaterally attack a guilty plea. We now overturn the majority's decision in Wlodarz and hold that a guilty plea may not be collaterally attacked pursuant to the coram nobis statute.

We determine the availability of the error coram nobis statute to attack guilty pleas by the usual rules of statutory construction. The role of this Court in statutory interpretation is to assign a statute the full effect of the legislative intent without restricting or expanding its intended scope. State v. Springer, 406 S.W.3d 526, 533 (Tenn. 2013); State v. Marshall, 319 S.W.3d 558, 561 (Tenn. 2010). In doing so, we first look to the plain language of the statute to determine the legislature's intent. State v. Jennings, 130 S.W.3d 43, 46 (Tenn. 2004). We are constrained to give the statute's words their natural and ordinary meaning. Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 526 (Tenn. 2010). When those words are clear and unambiguous, we need not consider other sources of information but must simply enforce the statute as written. See Shelby Cnty. Health Care Corp. v. Nationwide Mut. Ins. Co., 325 S.W.3d 88, 92 (Tenn. 2010); U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co., 277 S.W.3d 381, 386 (Tenn. 2009); Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 803 (Tenn. 2000). It is not the role of this Court to substitute its own policy judgments for those of the legislature. Gleaves, 15 S.W.3d at 803; BellSouth Telecomms., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997).

We begin our analysis by emphasizing that the coram nobis statute makes repeated references to the words "evidence," "litigated," and "trial." Significantly, the coram nobis statute makes no reference to the word "plea."

In Wlodarz, the majority briefly traced the history of the writ of error coram nobis, including a glance at how other jurisdictions applied the writ. 361 S.W.3d at 496-501. The majority noted that, "[a]t the federal level, . . . the writ of error coram nobis, grounded in hundreds of years of common law, remains a valid remedy available to challenge a conviction based on a guilty plea." Id. at 500 (citing Morgan, 346 U.S. at 510; 16A Fed. Proc. L. Ed. § 41:603 (West 2011); 39 Am. Jur. 2d Habeas Corpus § 209 (2011); 18 Am. Jur. Trials 1 § 17 (1971)). Next, referring to four decisions by other state courts, the majority stated that, "in the numerous states that continue to recognize writs of error coram nobis as separate and distinct from other post-conviction remedies, guilty pleas can be challenged via the writ." Id. at 500-01 (citing Echols v. State, 125 S.W.3d 153, 156 (Ark. 2003); State v. Brooks, 874 A.2d 280, 287 (Conn. App. Ct. 2005); Skok v. State, 760 A.2d 647, 662 (Md. 2000); People v. Antoniou, 872 N.Y.S.2d 756, 757 (N.Y. App. Div. 2009)). The majority then concluded that, "at all times past and present, where a state has offered the writ of error coram nobis as a potential remedy in criminal matters, there has never been an outright bar against using the writ to challenge a conviction based on a guilty plea." Id. at 501 (citing Duncan v. State, 169 So.2d 439, 441 (Ala. Ct. App. 1964); People v. Chaklader, 29 Cal.Rptr.2d 344, 345 (Cal. Ct. App. 1994); Wood v. State, 750 So.2d 592 (Fla. 1999); Reponte v. State, 556 P.2d 577 (Haw. 1976); People v. Andrus, 244 N.E.2d 161, 162 (Ill. 1969); State v. Hawkins, 51 P.2d 914, 914 (Kan. 1935); Dwyer v. State, 120 A.2d 276, 284 (Me. 1956); Baker v. State, 358 So.2d 401 (Miss. 1978); Arnold v. State, 552 S.W.2d 286, 291 (Mo. Ct. App. 1977); State v. LeMay, 396 P.2d 83 (Mont. 1964); State v. Lee, 252 S.E.2d 225, 227-29 (N.C. Ct. App. 1979); Hall v. Langlois, 276 A.2d 768, 770, 772 (R.I. 1971); State v. Plum, 378 P.2d 671, 673 (Utah 1963); State v. Schill, 286 N.W.2d 836, 842-45 (Wis. 1980)). However, none of the above nineteen decisions cited by the majority involved the construction of an error coram nobis statute similar to Tennessee's.

In spite of its references to the common law, the majority in Wlodarz conceded that it was construing Tennessee's *statutory* provision for seeking the writ. See id. (stating that "[t]he precise question presented in this case is whether the writ, *as codified in Tennessee Code Annotated section 40-26-105(b)*, may be used to challenge a conviction based upon a guilty plea, rather than a bench trial or a trial by jury" (emphasis added) (footnote omitted)). The majority noted that the coram nobis statute did not define the word "trial." Id. This perceived omission was then leveraged into a conclusion that what the legislature "intended by the use of the word trial [in the coram nobis statute] is not clear and unambiguous." Id. at 502.

From this statutory construction starting point, the majority first embraced various authorities interpreting the word "trial" "broadly," id. (citing 75 Am. Jur. 2d Trial § 1 (West 2011); 88 C.J.S. Trial § 1 (West 2011); Black's Law Dictionary 1543 (8th ed. 2004); Erickson v. Starling, 71 S.E.2d 384, 392 (N.C. 1952); Smith v. Mitchell, 148 P.3d

4

1151, 1155 n.2 (Ariz. Ct. App. 2006); In re Conservatorship of Joseph W., 131 Cal.Rptr.3d 896, 905 (Cal. Ct. App. 2011); Schiappa v. Ferrero, 767 A.2d 785, 789 (Conn. App. Ct. 2001); State v. Gonzalez, 493 N.W.2d 410, 412 (Wis. Ct. App. 1992)), and subsequently concluded that, because pleas of guilt involve the waiver of constitutional rights, it would be "inappropriate . . . to trivialize a guilty plea proceeding by holding that it does not constitute a 'trial,'" id. at 503.

We respectfully disagree with this analysis. First, there is nothing unclear or ambiguous about the statutory language "litigated on the trial," "litigated at the trial," and "the trial." The plain and ordinary meaning of the term "litigated on [or at] the trial" in the context of criminal prosecutions refers to a contested proceeding involving the submission of evidence to a fact-finder who then must assess and weigh the proof in light of the applicable law and arrive at a verdict of guilt or acquittal. See Wlodarz, 361 S.W.3d at 509 (Koch, J., concurring in result) (opining that, "[i]n common parlance, a criminal trial is a contested proceeding in open court in which a jury, or in some circumstances a judge, hears the evidence presented by the parties and tested by cross-examination and then determines, based on the weight of the evidence and credibility of the witnesses, whether the prosecution has proved the defendant's guilt beyond a reasonable doubt"). Indeed, the majority in Wlodarz recognized that the word "trial" has been defined as a "'formal judicial examination of evidence and determination of legal claims in an *adversary proceeding*.'" Id. at 502 (emphasis added) (quoting Black's Law Dictionary 1543 (8th ed. 2004)); see also Black's Law Dictionary 934 (6th ed. 1990) (defining "litigate" as "a judicial *contest*; hence, any *controversy* that must be decided upon evidence in a court of law" (emphases added)).

We emphasize that a guilty plea proceeding is neither contested nor adversarial. Rather, at a typical guilty plea submission hearing, the defendant admits to having committed one or more particular criminal offenses.[1] If the defendant is simply pleading guilty to all of the offenses with which he is charged, the State will have no grounds to

---

[1]     Although uncommon, criminal defendants also may plead guilty while maintaining that they did not commit the crime charged. Such pleas are often referred to as "Alford pleas" based on the United States Supreme Court case, North Carolina v. Alford, 400 U.S. 25 (1970). In Alford, our nation's high court held that a defendant who professed his innocence could nonetheless enter a constitutionally valid guilty plea when the defendant "intelligently concludes that his interests require entry of a guilty plea." Id. at 37. Our Rules of Criminal Procedure refer to such pleas as "nolo contendere" pleas. Tenn. R. Crim. P. 11(a)(2); see also State v. Crowe, 168 S.W.3d 731, 743 (Tenn. 2005). While we recognize that a criminal defendant who enters an Alford plea may have a stronger public policy argument than other criminal defendants for the right to seek error coram nobis relief, the issue remains one of a policy judgment which is within the province of the legislature, not this Court.

contest the plea.[2]  Frequently, however, the defendant is pleading guilty after having reached a plea bargain with the State.  Such agreements may include the defendant's pleas of guilt to fewer than all of the offenses charged, with the remaining offenses being dismissed; pleas of guilt to lesser-included offenses of those charged; an agreement as to the sentence to be imposed on those charges to which the defendant pleads guilty; or some combination of these components.  See generally Tenn. R. Crim. P. 11(c)(1).  In a plea bargain, the defendant and the State are actively cooperating.  With or without a plea bargain, however, the guilty plea proceeding is non-adversarial.

Second, while the trial court is required to "determine that there is a factual basis for the plea," Tenn. R. Crim. P. 11(b)(3), the factual basis typically is provided in summary form by the prosecutor, not through the testimony of sworn witnesses whose testimony is subject to (adversarial) cross-examination.[3]  That is, in addition to being non-adversarial, guilty plea hearings do not typically involve "evidence."  However, a defendant is not entitled to relief under the coram nobis statute unless he demonstrates that he "was without fault in failing to present certain evidence at the proper time."  Tenn. Code Ann. § 40-26-105(b).  The "proper time" for criminal defendants to present evidence is during trials or in hearings held in conjunction with trial preparation, not during guilty plea submission hearings.  As our Court of Criminal Appeals has recognized, "[e]vidence is defined as 'any species of proof legally presented *at trial* through the medium of witnesses, records, documents, exhibits, and concrete objects for the purpose of inducing belief in the minds of the court or jury,'" State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003) (emphasis added) (quoting 29 Am. Jur. 2d Evidence § 1 (1994)), and "[m]atter which was not introduced or presented as evidence *at trial* does not come within the commonly accepted definition of evidence," id. (emphasis added) (citing 29 Am. Jur. 2d Evidence § 3 (1994)).  Thus, this prerequisite to coram nobis relief set forth in the statute reinforces the statute's limitation to convictions that resulted from trials rather than from guilty pleas.

Third, in addition to determining that there is a factual basis for the defendant's guilty plea, the trial court must ensure during the plea submission hearing that the defendant is *waiving his right to a trial*.  See Tenn. R. Crim. P. 11(b)(1)(H).  Basic logic dictates that one cannot simultaneously participate in a trial and waive one's right to a trial.  Rather, applying the plain and ordinary meanings to the words "trial" and "guilty plea" results in the conclusion that the two proceedings are mutually exclusive.  See Palacio v. United States, No. 13-4269 (RMB), 2014 WL 2932567, at *4 (D. N.J. June 30,

---

[2]  We assume for the purposes of this statement that the defendant's guilty plea is entered in accordance with constitutional and statutory requirements.

[3]  A trial court is not required to determine that there is a factual basis for a nolo contendere plea. See Crowe, 168 S.W.3d at 747.

2014) (describing a trial and pleading guilty as "two mutually-exclusive options"); Gavaria v. United States, C.A. No. 06-12142-MLW, 2010 WL 606969, at *4 (D. Mass. Feb. 15, 2010) (same). Thus, criminal defendants who plead "not guilty" are tried. Conversely, criminal defendants who plead "guilty" are not. Indeed, a criminal defendant pleads guilty in order to *avoid* a trial, frequently because the prosecution has agreed to accept a plea to a lesser offense than that with which the defendant was originally charged and/or because the prosecution has agreed to a sentence that is less onerous than the sentence the trial court might impose without a plea bargain.

Finally, our holding that a guilty plea hearing does not constitute a trial for the purposes of the error coram nobis statute in no way "trivializes" a guilty plea proceeding. As the majority pointed out in Wlodarz, this Court has taken great care to "[r]ecogniz[e] the magnitude of" guilty plea proceedings. Wlodarz, 361 S.W.3d at 503 (citing State v. Mackey, 553 S.W.2d 337, 339 (Tenn. 1977)). We have emphasized that "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the [guilty] plea connotes and of its consequence." State v. Crowe, 168 S.W.3d 731, 749 (Tenn. 2005) (quoting Boykin v. Alabama, 395 U.S. 238, 243-44 (1969)). This Court was so concerned with the rights of those criminal defendants who wished to plead guilty that, in Mackey, this Court "imposed additional safeguards in the taking of a guilty plea, beyond the scope of [the federal constitutional requirements set forth in] Boykin." Blankenship v. State, 858 S.W.2d 897, 903 (Tenn. 1993) (citing Mackey, 553 S.W.2d 337). "We did so as a matter of state law, in order better to assure that such pleas are entered voluntarily and intelligently." Id. (citing Mackey, 553 S.W.2d at 340-41).

Indeed, after Mackey, this Court adopted Rule of Criminal Procedure 11, which provides detailed guidance on what a trial court must do in conjunction with accepting a guilty plea:

(1) Advising and Questioning the Defendant. — Before accepting a guilty or nolo contendere [Alford] plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A) The nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

7

(C) if the defendant is not represented by an attorney, the right to be represented by counsel–and if necessary have the court appoint counsel–at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self-incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

. . . .

(2) Insuring that Plea is Voluntary. — Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and determine that the plea is voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement). The court shall also inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney.

(3) Determining Factual Basis for Plea. — Before entering judgment on a guilty plea, the court shall determine that there is a factual basis for the plea.

Tenn. R. Crim. P. 11(b). If a trial court fails to substantially comply with Rule 11(b)'s requirements, the defendant's plea may be set aside. See, e.g., Lane v. State, 316 S.W.3d 555, 564 (Tenn. 2010) (recognizing that trial courts "must substantially comply" with Rule 11's requirements); Crowe, 168 S.W.3d at 751-52 (holding that defendant must be allowed to withdraw his guilty plea because he had not been informed about the nature of the offense to which he had pled guilty).

The crucial requirements of a guilty plea are that the defendant enter the plea voluntarily, knowingly, and intelligently. Ward v. State, 315 S.W.3d 461, 465 (Tenn. 2010) (citing Alford, 400 U.S. at 31; Brady v. United States, 397 U.S. 742, 747 (1970);

Boykin, 395 U.S. at 242-44; Mackey, 553 S.W.2d at 340). Our common law and Rules of Criminal Procedure ensure that a criminal defendant's plea of guilt is handled properly and that his constitutional rights are protected during the proceeding. If the defendant's plea is allegedly infirm, he has several avenues for seeking redress, including a motion to withdraw his plea, see Tenn. R. Crim. P. 32(f), and a claim for post-conviction relief, see Tenn. Code Ann. § 40-30-103 (2012). In light of these significant and comprehensive procedural mechanisms already in place to safeguard the guilty plea process, we disagree that we "trivialize" the guilty plea proceeding by concluding that it is not a "trial" and, therefore, not subject to collateral attack via the coram nobis statute.

In sum, we conclude that Wlodarz was wrongly decided and should be overturned. Although stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process, . . . [s]tare decisis is not an inexorable command." Payne v. Tennessee, 501 U.S. 808, 827-28 (1991) (emphasis removed). Rather,

> [t]he general American doctrine as applied to courts of last resort is that a court is not inexorably bound by its own precedents but will follow the rule of law which it has established in earlier cases, unless clearly convinced that the rule was originally erroneous . . . and that more good than harm will come by departing from precedent.

State v. Menzies, 889 P.2d 393, 399 (Utah 1994) (quoting John Hanna, The Role of Precedent in Judicial Decision, 2 Vill. L. Rev. 367, 367 (1957)).

"Our oath is to do justice, not to perpetuate error." Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593, 599 (Tenn. 1999) (quoting Montgomery v. Stephan, 101 N.W.2d 227, 229 (Mich. 1960)). Therefore, the doctrine of stare decisis does not compel this Court to maintain erroneous, "unworkable," or "badly reasoned" precedent. Payne, 501 U.S. at 827 (citing Smith v. Allwright, 321 U.S. 649, 665 (1944)); see also In re Estate of McFarland, 167 S.W.3d 299, 306 (2005) (recognizing that "obvious error" in precedent justifies overruling it); Arnold v. City of Knoxville, 90 S.W. 469, 470 (Tenn. 1905) (stating that, "if an error has been committed, and becomes plain and palpable, th[is] [C]ourt will not decline to correct it"). Indeed, in Jordan, this Court abrogated a ninety-six-year-old decision even though the statutory language at issue had undergone no change. See Jordan, 984 S.W.2d at 600. In contrast, Wlodarz is only a few years old.

We hold that the coram nobis statute is not available as a procedural mechanism for collaterally attacking a guilty plea. We overturn Wlodarz and any other Tennessee cases holding otherwise.

In the present case, the Petitioner seeks to collaterally attack his guilty plea through the use of the error coram nobis statute. Accordingly, by application of the interpretation of this statute we adopt today, the Petitioner is not entitled to relief in this action.

## **Conclusion**

We affirm the judgment of the Court of Criminal Appeals on the separate grounds stated herein.

_____
JEFFREY S. BIVINS, JUSTICE