IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 4, 2018

## EDWARD HOOD, II v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Henderson County**
**No. 08059-3  Kyle Atkins, Judge**

_____

**No. W2017-00934-CCA-R3-ECN**

_____

The pro se Petitioner, Edward Hood, II, appeals the summary dismissal of his petition for writ of error coram nobis, arguing that a letter that he received from his daughter, K.P., constitutes newly discovered evidence of his innocence and that the coram nobis court erred in dismissing his petition without the appointment of counsel or an evidentiary hearing.  Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Edward L. Hood, II, Whiteville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The Petitioner was convicted by a Henderson County Circuit Court jury of two counts of rape of a child, a Class A felony, and two counts of incest, a Class C felony, and was sentenced to consecutive sentences of twenty-three years and twenty-five years for the rape of a child convictions and concurrent five year sentences for each of the incest convictions, for an effective sentence of forty-eight years in the Tennessee

Department of Correction.[1] <u>State v. Edward L. Hood, Jr.</u>, No. W2009-02501-CCA-R3-CD, 2010 WL 5054422, at *1 (Tenn. Crim. App. Dec. 6, 2010), <u>perm. app. denied</u> (Tenn. Apr. 14, 2011). His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. Our direct appeal opinion provides the following summary of the proof presented at trial:

> ***Trial.*** C.L., the victim in this case, testified that she was eleven years old when the first crime in this case occurred. She stated that on February 24, 2007, her father, [the Petitioner], entered her room and took off his clothes. He then walked over to her bed, took her pajamas off, got on top of her, and penetrated her vagina with his penis. Before leaving her room, [the Petitioner] told the victim, "If you say anything[,] I'm going to hurt you." The victim stated that she remembered the crime occurring on February 24 because it was close to her mother's birthday on February 23.
>
> On July 28, 2007, the victim stated that her father had sexual intercourse with her in the same manner as on February 24, 2007. She remembered the date that this second crime occurred because it was close to her birthday on July 20. She said she later told her mother about these crimes, but she and her mother did not immediately report these crimes to the police. The victim said that she and her mother reported the crimes to the police some time in December when her father was no longer living with them. The victim said that she did not immediately tell her mother about the February 24, 2007 crime because she was scared. She could not explain why she and her mother did not contact the police regarding the crimes sooner. On cross-examination, the victim denied allowing boys into her room through her window.
>
> Landon Delaney testified that he was a correctional officer at the Henderson County Jail in 2007. On December 26, 2007, during a random search of [the Petitioner's] cell, Delaney found a note written by [the Petitioner], which stated, "I, [the Petitioner], fingered and [f——] my youngest child, [the victim], and said some sex-related things to [the victim's] friend, [K.B.]. She and [the victim] were talking about sex and having a threesome. I said I wanted to see that. Signed, Ed Hood." Delaney said that he removed the note from [the Petitioner's] cell and gave it to the jail sergeant, Lelani Murphy. Although [the Petitioner] never reported a fight while he was in jail, Delaney remembered [the Petitioner] having a black eye at some point during his

---

[1] Edward Hood was referred to as Edward L. Hood, Jr. on direct appeal and is referred to as Edward Hood, II, in this error coram nobis appeal. Edward L. Hood, Jr. and Edward Hood, II, both refer to the same person, the Petitioner.

- 2 -

incarceration. He said [the Petitioner] never disclosed who had given him the black eye and never wanted to answer any questions about it. Delaney stated that it was unusual for inmates to write confessions and that [Petitioner's] note was the only confession that he had ever found at the jail.

Justin Wallace, an investigator with the Henderson County Sheriff's Department, testified that [the Petitioner] asked to speak with him on December 26, 2007, regarding the note that was found in his cell. Investigator Wallace gave [the Petitioner] his *Miranda* rights, [the Petitioner] signed a written waiver of these rights, and then [the Petitioner] gave the following statement:

> I, Ed Hood, did advise Investigator Wallace that there was a possibility that while I was messed up on pills that I could have had sexual relations with my daughter, [the victim]. I also advised him that while my daughter was on the phone with [K.B.] I overheard them talking about having a threesome. I advised [K.B.] that I would like to see that when she was eighteen.

Donna Heatherington, a lieutenant with the Lexington Police Department, testified that the victim and the victim's mother initially reported the crimes to her in December 2007. She then set up a forensic interview for the victim at the Carl Perkins Center. Although she attempted to talk to [the Petitioner] about these crimes, he refused to talk to her. She said that she did not interview the victim's sister, K.P., because she was not living in the home at the time that these crimes occurred. Lieutenant Heatherington stated that a rape kit was not conducted on the victim because so much time had passed since the crimes were committed. Following Lt. Heatherington's testimony, the State rested.

. . .

Robin Reddick, the victim's aunt and [the Petitioner's] sister, stated that the victim had lived with her for approximately a month and a half. Reddick stated that she did not find the victim to be an honest, truthful child.

Victoria Westerfield, the victim's cousin, testified that the victim told her at a Christmas party that "she lied about her daddy's case and misse[d] her daddy." Westerfield said that there were no adults present when the victim made this statement to her.

- 3 -

. . .

Shannon Hood, the victim's mother, testified that she gave a statement to Lieutenant Heatherington regarding the crimes [the Petitioner] committed against her daughter. She stated that [the Petitioner] had become slightly more strict with the victim just before the victim made the sexual abuse allegations against him. During cross-examination by the State, Ms. Hood admitted that she was aware that [the Petitioner] was committing these crimes against their daughter but did not tell the police immediately. However, Ms. Hood said that she told Lieutenant Heatherington that she failed to contact the police immediately regarding [the Petitioner's] crimes. She said that her failure to immediately contact the police about these crimes was one of the main reasons that the victim was currently living with a foster family instead of with her. Ms. Hood said that she knew [the Petitioner] was committing these crimes because she "heard moaning" when [the Petitioner] would go into the victim's room. She said that [the Petitioner] would stay in the victim's room for thirty minutes to an hour. She claimed that she did not contact the police because she "was scared."

Hood, 2010 WL 5054422, at *1-3.

Defense counsel sought to call the victim's sister, K.P., as a witness at trial. The State objected, expressing concern that K.P. was not capable of testifying because she was mentally incompetent." Id. at *6. Following a jury-out hearing, the trial court excluded K.P. as a witness based on its observations of her. Id. at *7. The court noted for the record that "when [K.P.] was asked to raise her hand she could barely do that." Id.

On direct appeal, the Petitioner argued that his right to present witnesses was violated by the court's refusal to allow the defense to call K.P. to testify. Specifically, he contended that "because there was no voir dire regarding K.P.'s competency, the trial court was unable to make an informed decision regarding this issue." Id. at *6. The State responded that the issue was waived "because there was no offer at proof made at trial or at the motion for new trial hearing regarding K.P.'s competency to testify." Id. The State further argued that the exclusion of K.P.'s testimony was harmless given "the substantial proof of [the Petitioner's] guilt at trial." Id. This court agreed with the State, concluding that "the trial court did not abuse its discretion in preventing K.P. from testifying for the defense." Id. at *7.

On July 15, 2014, the Petitioner filed a petition for post-conviction relief in which he asserted, among other things, that he was entitled to due process tolling of the statute

of limitations "due to his incompetence."  Edward Hood, Jr. v. State, No. W2016-01998-CCA-R3-PC, 2017 WL 2482991, at *3, *5 (Tenn. Crim. App. June 7, 2017).  On appeal, this court affirmed the dismissal of the petition as time-barred, concluding that the Petitioner had not demonstrated that the statute of limitations should be tolled due to his alleged mental incompetence.  Id. at *5-*7.

On February 2, 2017, the petitioner filed the pro se petition for writ of error coram nobis at issue in this case, arguing that he had newly discovered evidence, specifically, an undated note signed by his daughter, K.P., which entitled him to a new trial.[2]  The note, which was not dated or notarized and appeared to be in a child's handwriting read, "This is to say I K.P.W. heard my sister; C.[3] say that she lied on her Dad; Edward Hood at a Christmas party.  Another time the state had set up a supervised visit, she told me she had lied and it wasn't true and she knew it wasn't.  Signed, K.P.W."[4]

On April 13, 2017, the error coram nobis court entered an order dismissing the petition on the grounds that the note did not constitute newly discovered evidence, as the information in the letter "was reasonably available at the time of trial."  The court also determined that the letter was unreliable because it was not dated or notarized and its author had been found incompetent to testify at trial.  Further, the court held that the letter would not have resulted in a different verdict because "there was testimony during the original trial by other witnesses and by the victim that the victim lied about the abuse by [the] [P]etitioner."  On May 4, 2017, the Petitioner filed a timely notice of appeal.

## ANALYSIS

The Petitioner contends that the trial court erred when it denied his petition for writ of error coram nobis.  He acknowledges that his petition was filed almost seven years after the statute of limitations expired, but argues that due process should toll the statute of limitations due to his newly discovered evidence.  He alleges that he "exercised due diligence in trying to locate evidence to prove his innocence, but [was] unsuccessful until December 18, 2016 when he received his letter from [K.P.]" in which K.P. stated that the victim told her that the victim lied about the Petitioner's raping the victim.  The Petitioner requests a remand to the trial court for an evidentiary hearing and the appointment of counsel to determine whether the letter was reliable, whether a different verdict would have resulted from this allegedly newly discovered evidence, and whether K.P. is currently incompetent.

---

[2] In accordance with the policy of this court, we identify minors by their initials.

[3] It is the policy of this court to refer to juvenile victims of sexual assault by their initials only.

[4] At trial, the court referred to the victim's sister as K.P.  K.P.W. and K.P. are the same person.

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c) (2012).

Our supreme court has stated the standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." State v. Vasques, 221 S.W.3d 514, 525-28 (Tenn. 2007) (citations omitted).

Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner establishes that he or she was "without fault" in failing to present the evidence at the proper time. Harris v. State, 102 S.W.3d 587, 592 (Tenn. 2003). Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. Id. at 592-93. The decision to grant or deny a petition for writ of error coram nobis based on newly discovered evidence lies within the sound discretion of the trial court. See Tenn. Code Ann. § 40-26-105; State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995); Vasques, 221 S.W.3d at 527-28. We review this issue, therefore, under an abuse of discretion standard.

We conclude that the trial court properly dismissed the petition without a hearing. First, we agree that the petition was untimely and that the Petitioner has shown no reason that the statute of limitations should be tolled. The time limit for seeking a writ of error coram nobis is one year from the date the judgment becomes final in the trial court. See Tenn. Code Ann. § 40-26-105, 27-7-103; Mixon, 983 S.W.2d at 667. In this matter, the judgment became final in 2009, but the petition for post-conviction relief was not filed until 2017, meaning that it was untimely by nearly seven years.

Second, even if the letter from K.P. were deemed reliable and thus considered by the court, it did not present any new evidence that may have produced a different result at the Petitioner's trial. The letter was consistent with the trial testimony of the victim's cousin, Victoria Westerfield, that the victim told her that the victim "lied about her daddy's case and misse[d] her daddy." Hood, 2010 WL 5054422, at *2. Further, the victim admitted at trial that she had previously told a forensic interviewer that the Petitioner never sexually abused her, but explained that she said this because she did not want the Petitioner to get into trouble and because she was afraid of him. Id. "Newly discovered evidence that is merely cumulative or serves no other purpose than to contradict or impeach does not warrant the issuance of the writ." Wlodarz v. State, 361 S.W.3d 490, 499 (Tenn. 2012), abrogated on other grounds by Frazier v. State, 495 S.W.3d 246, 28 (Tenn. 2016). Therefore, we conclude that the trial court properly dismissed the Petitioner's untimely petition for writ of error coram nobis relief without appointing counsel or holding an evidentiary hearing. See State v. Lingerfelt, 687 S.W.2d 294, 295 (Tenn. Crim. App. 1984).

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court dismissing the petition for writ of error coram nobis.

_____
ALAN E. GLENN, JUDGE