IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2019

**JAMAR SCOTT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County
No. 2016-A-419    Seth W. Norman, Judge**

_____

**No. M2019-00014-CCA-R3-ECN**

_____

The Petitioner, Jamar Scott, appeals the denial of his petition for writ of error coram nobis, alleging that he has newly discovered evidence of innocence. Following our review, we affirm the judgment of the error coram nobis court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Lauren Wills, Nashville, Tennessee, for the appellant, Jamar Scott.

Herbert H. Slatery III, Attorney General and Reporter; and Garrett D. Ward, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In January 2006, the Petitioner and his girlfriend, Francine Goss, were jointly indicted by the Davidson County Grand Jury for two counts of first degree felony murder, two counts of first degree premeditated murder, and two counts of attempted robbery based on their robbery scheme in which the two victims were shot and killed

after Francine[1] lured the men to her home to rob them. State v. Jamar Ed-Wae Scott, No. M2010-00809-CCA-R3-CD, 2011 WL 6382548, at *1 (Tenn. Crim. App. Dec. 15, 2011). The cases were later severed and the Petitioner was twice tried separately. His first trial ended in a hung jury and his second trial ended in the jury's convicting him on all indicted charges. After merging the murder convictions involving the same victims, the trial court sentenced the Petitioner to an effective term of life plus eight years in the Department of Correction. On direct appeal, this court affirmed the judgments of the trial court. Id.

The Petitioner filed a timely petition for post-conviction relief, which was denied by the post-conviction court. This court affirmed the judgment of the post-conviction court and our supreme court denied the Petitioner's application for permission to appeal. Jamar Ed-Wae Scott v. State, No. M2013-01724-CCA-R3-PC, 2014 WL 2568138, at *1 (Tenn. Crim. App. June 9, 2014), perm. app. denied (Tenn. Nov. 20, 2014). Our post-conviction opinion provides the following overview of the proof the State presented at the Petitioner's second trial:

> The evidence adduced at the [P]etitioner's trial, as summarized by this court on direct appeal, established that on September 10, 2005, the [P]etitioner's girlfriend, Francine Goss, announced plans to commit a robbery to obtain money and that she selected the victims when she went to the store with a friend during the early morning hours of September 11, 2005. Ms. Goss brought the victims to her home, where five children lay sleeping in a back bedroom. One of the children testified that that she had seen the [P]etitioner inside Ms. Goss's residence with a gun in his waistband. At some point, "a 'shootout' occurred in Goss's home," and the victims died as a result of multiple gunshot wounds sustained during the shootout. Telephone records established that Ms. Goss and the [P]etitioner spoke to each other 28 times between 2:32 a.m. and 4:38 a.m. Other evidence established that the shootings occurred after 4:00 a.m. The [P]etitioner admitted to two of his friends that he had shot two people, and threatened the life of a potential State witness.

Id. (internal citations omitted).

On December 30, 2015, the Petitioner filed a pro se petition for writ of error coram nobis on the basis of newly discovered evidence. He alleged that in June 2015, he

---

[1] Because two of the individuals involved in this case, Francine Goss and her sister, Victoria Goss, share the same last name, we will at times refer to them by their first names for simplicity's sake. We intend no disrespect by doing so.

- 2 -

discovered a previously undisclosed interview that Detective Danny Satterfield had conducted with the Petitioner's girlfriend's sister, Victoria Goss, in which she specifically stated that the Petitioner was not involved in the shooting. According to the Petitioner, he had been unaware of that interview or that Victoria had specifically excluded him as the perpetrator.

The error coram nobis court noted that the petition appeared on its face to be untimely but nevertheless appointed counsel to determine if due process required the tolling of the statute of limitations. On October 4, 2016, error coram nobis counsel filed an amended petition asserting, among other things, that the Petitioner and his counsel had been diligent in their attempts to obtain any and all Brady material, that the Petitioner was without fault in not discovering the videotaped interview until June 2015, and that the error coram nobis petition was timely because it was filed within a year of the Petitioner's discovery of the previously unknown evidence.

At the error coram nobis hearing, the Petitioner testified that he had had a total of five different attorneys over the course of the case. He said he asked each successive attorney to provide him with copies of witness statements but he never received them. Finally, in January 2013, he requested his file from the district attorney's office. He initially received a response informing him that he could purchase a copy of the file. He later, however, received a follow-up letter informing him that he could not receive a copy of his case file while his post-conviction case was pending.

The Petitioner testified that after his post-conviction case was completed he at first attempted to get the case file from his post-conviction counsel but was unsuccessful. He then again contacted the district attorney's office directly and ultimately received the file on June 19, 2015, after he signed a limited power of attorney authorizing his sister and his cousin to pick it up on his behalf.

The Petitioner testified that when he reviewed his case file, he saw for the first time a "Certified Voice Stress Analysis Test,"[2] in which a criminal investigator concluded that Victoria Goss, an eyewitness to the crimes, had been truthful in her interview with law enforcement. The Petitioner said he then went to the prison library and viewed the DVD of Victoria's interview. During her interview, Victoria stated that she was familiar with the Petitioner and was certain that the Petitioner was not the man who shot the two victims. The Petitioner said that the above specific exonerating information was not in the detective's supplemental report or any other information he received in discovery.

---

[2] This was alternately referred to as a lie detector test.

On cross-examination, the Petitioner acknowledged that he knew Victoria was familiar with him and was aware that neither Francine nor Victoria ever identified him as a perpetrator of the crimes. He further acknowledged that Detective Satterfield testified at his trial that no one had identified the Petitioner. He complained, however, that the essential information -- that Victoria had specifically excluded him as the perpetrator -- was missing from the detective's supplemental report. According to the Petitioner, had he and his counsel known of that interview and its contents, they would have sent their private investigator to question Victoria in more detail.

The Petitioner testified that he did not know if his counsel had ever gone to the police department's evidence room or whether the DVD of the interview had been there. Regardless, he insisted that Victoria's interview was not included in the discovery materials provided by the State. He conceded that a witness at his first trial, Reginald Alexander, testified that the Petitioner told him that Victoria Goss had seen the perpetrator and that the Petitioner was not the perpetrator. The Petitioner claimed, however, that he never spoke to Mr. Alexander and that Mr. Alexander's trial testimony was fabricated.

The Petitioner's trial counsel, who represented him in both trials, testified that she requested and received discovery from the State, including DVDs of witness statements, but never received the DVD of the interview at issue. She knew that Victoria was an eyewitness to the crimes but, although her investigator had spoken with Victoria, until trial counsel was contacted by error coram nobis counsel she was unaware of the existence of either the DVD or the Voice Analysis Stress Test. Trial counsel was uncertain whether she would have called Victoria as a defense witness had she known about the DVD before trial, but she agreed that such knowledge would have altered the manner in which she investigated the case and conducted the trial.

On cross-examination, trial counsel acknowledged she was aware from the beginning of her representation that Victoria had been an eyewitness, that she had been interviewed by the police, and that she had not identified the Petitioner as the perpetrator. She further acknowledged that she had been in possession of the initial statement that Victoria gave to police immediately after the shooting, and she conceded that it came out at trial that no one present at the crime scene was able to identify the perpetrator.

Trial counsel testified that she had not seen the DVD at issue but from her understanding it contained a two-hour interview of Victoria along with the administration of a lie detector test. She acknowledged that the lie detector test would not have been admissible at trial but said her knowledge of the test results could have changed the way she assembled defense evidence. She conceded that in addition to her investigator having interviewed Victoria, she herself "probably talked to her on the phone," although she had

no memory of doing so. She recalled having gone to the district attorney's office to look through the file and said she probably went to the property evidence room as well but could not remember.

Co-counsel, who also represented the Petitioner during both trials, testified that he was aware that Victoria Goss had been interviewed by the police detective but was unaware that she had been given a lie detector test or that she had been specifically questioned about the Petitioner. On cross-examination, he acknowledged he and trial counsel knew that both Victoria and Francine Goss were eyewitnesses and that he was able to elicit from Detective Satterfield at trial that no one ever named the Petitioner as the perpetrator. He insisted, however, that there was a vast difference between knowing that Victoria never identified the Petitioner as the perpetrator and knowing that she affirmatively stated that she was familiar with the Petitioner and that he was not present during the shooting. According to co-counsel, had they known the latter, they would have called Victoria as a defense witness:

> No, the point is, is that, our defense is that he wasn't there and we had a declarative statement by a witness that we never received. Had we received that, we would have put it on. . . . . If this tape exist[s] and we had listened to this tape, there's no way we could have gone through this trial without calling her as a witness. I'm saying that vigorously. Period.
>
> That's what I was brought on to do was to try the case and I pretty much formulated the trial strategy. Had I known this, we would have had Victoria Goss here, on the stand, testifying. That was everything.

The Petitioner's post-conviction counsel testified that during her representation of the Petitioner, she was never aware of either the videotaped interview of Victoria Goss or the lie detector test. Moreover, she had carefully gone through her file as a result of the Petitioner's having filed a June 2014 complaint against her with the Board of Professional Responsibility and found no mention of the recorded interview or the lie detector test.

On cross-examination, post-conviction counsel acknowledged that the State had turned over disks of recorded interviews to trial counsel as part of discovery. She recalled having gone to the district attorney's office to review the case file but did not recall having seen the disk in question. She did not recall having ever gone to the police property room. She said she attempted to interview Victoria Goss but was unable to locate her.

Detective Danny Satterfield of the Metro Nashville Police Department agreed that neither the Petitioner's name nor Victoria's stress test was mentioned in his one-page report of the September 21, 2005 interview with Victoria Goss. He said he turned over the entire case file, including the tape of the interview, to the district attorney's office.

The assistant district attorney who co-prosecuted the trial, called as a witness by the State, testified that the district attorney's office provided open file discovery to defense counsel. He said that Francine Goss was attempting to negotiate a deal at the time of the Petitioner's second trial and was on standby to testify for the State, but they ultimately did not feel the need to call her as a witness. Had Victoria Goss testified at trial that the perpetrator was not the Petitioner, they would have called Francine to rebut Victoria's testimony. He agreed that the State had a number of witnesses against the Petitioner, including the Petitioner's friend who testified that the Petitioner admitted that he killed the victims and a neighbor who reported having seen the Petitioner walk to Francine's home a short time before the shooting and return to his vehicle after the gunshots. The prosecutor said he did not initially remember Victoria Goss's voice stress test but as he reviewed the case he began to recall it:

> But the more I saved everything, I recall conversations about - - not just hers but Francine Goss's Stress Test. That was one of the reasons we didn't - - not because of the Stress Test - - but one of the reasons we didn't want to call her, was because, I didn't know whether she would end up identifying [the Petitioner] as being the perpetrator. I had a feeling she might, because her sister, by then, was cooperating. But the point is, that we didn't need to put on another witness that had given inconsistent statements. You know, whether we called her - - if we called her, then they could impeach her on the fact [that she initially did not identify the Petitioner].

On cross-examination, the prosecutor testified that witness statements and recorded interviews should not only have been in the police property room but also in the case file kept in the district attorney's office. He thought he remembered that everything in the file was copied for defense counsel as part of discovery but said defense counsel might have chosen only certain items to be copied. He acknowledged that the DVD of Victoria's interview would have been a relevant piece of evidence to copy. He could not explain why trial counsel missed it but pointed out that the Petitioner's sister and cousin had been able to find it when they went to the district attorney's office to get a copy of the file for the Petitioner. He was adamant that he did not withhold the DVD from defense counsel or remove it from the case file at any time.

On December 7, 2018, the error coram nobis court entered an order denying the petition. Addressing the merits of the petition, the court concluded that the Petitioner failed to show that the videotape was newly discovered evidence that may have changed the result of the trial. Among other things, the court found that although the videotaped interview with Victoria Goss was exculpatory, the information she provided in it was available to the Petitioner and, as such, that the videotape was merely cumulative. The court disagreed that there was a significant difference between "the more generalized failure to make an identification and the direct statement that it was not [the Petitioner]."

## ANALYSIS

The Petitioner contends that the error coram nobis court abused its discretion in denying the petition, asserting that he met his burden of demonstrating that he was without fault in failing to have discovered the DVD before trial and that the DVD might have resulted in a different judgment had it been available at trial. In support of the latter assertion, the Petitioner argues that he could have used the DVD to, among other things, impeach the credibility of Detective Satterfield, who neglected to mention anything in his supplemental report about the Voice Stress Analysis Test or the fact that Victoria Goss specifically excluded the Petitioner as the perpetrator. The State responds by arguing that the error coram nobis court properly denied the petition because "the proffered evidence did not contain facts existing but not ascertained at [the] time of trial." We agree with the State.

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c).

Our supreme court has stated the standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." State v. Vasques, 221 S.W.3d 514, 525-28 (Tenn. 2007) (citation omitted). Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner establishes that he or she was "without fault" in failing to present the evidence at the proper time. Harris v. State, 102 S.W.3d 587, 592 (Tenn. 2003). Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. Id. at 592-93. The decision to grant or deny coram nobis relief rests within the sound discretion of the coram nobis court. Vasques, 221 S.W.3d at 527-28. We review this issue, therefore, under an abuse of discretion standard.

We find no abuse of discretion in the error coram nobis court's denial of the petition. Both of the Petitioner's trial counsel were aware from the beginning that Victoria Goss was an eyewitness, that she was familiar with the Petitioner, and that she reported to the police that she could not identify the perpetrator. Counsel's investigator interviewed her and trial counsel herself acknowledged that she probably spoke to her by telephone. Therefore, assuming, *arguendo*, that her September 21, 2005 videotaped interview was missing or not included in the discovery file, it does not constitute newly discovered evidence that may have resulted in a different judgment had it been presented at trial. "Newly discovered evidence that is merely cumulative or serves no other purpose than to contradict or impeach does not warrant the issuance of the writ." Wlodarz v. State, 361 S.W.3d 490, 499 (Tenn. 2012), abrogated on other grounds by Frazier v. State, 495 S.W.3d 246, 28 (Tenn. 2016). Therefore, we affirm the denial of the petition for writ of error coram nobis.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the error coram nobis court.

_____
ALAN E. GLENN, JUDGE

- 8 -