IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 14, 2017 Session

**RONALD CHRISTOPHER HAYES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Jackson County**
**No. 09-CR-20        Brody N. Kane, Judge**

_____

**No. M2016-01094-CCA-R3-ECN**

_____

In 2010, the Petitioner entered a "best interest" plea to second degree murder and was sentenced to a term of twenty-five years. On April 5, 2016, the Petitioner filed a petition for a writ of error *coram nobis*, alleging that newly discovered evidence exists. On May 5, 2016, the trial court issued an order denying the petition as time-barred. The Petitioner appeals, arguing that the trial court erred by failing to toll the statute of limitations. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J. joined. CAMILLE R. MCMULLEN, J., concurs in result only.

Douglas A Trant, Knoxville, Tennessee, for the appellant, Ronald Christopher Hayes.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Ian D. Bratton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

In 2009, a Jackson County grand jury indicted the Petitioner for felony murder, second degree murder, and especially aggravated child abuse for his role in the death of his live-in girlfriend's infant child, the victim. On April 13, 2010, by agreement of the parties, the Petitioner entered a "best interest" plea of guilty to second degree murder and an agreed sentence of twenty-five years was imposed. The remaining charges were dismissed.

In April 2016, the Petitioner filed a petition for a writ of error *coram nobis*, alleging newly discovered evidence in the form of an affidavit containing "substantial and credible information" that the victim's mother, Brandi Castle, had inflicted injuries on another child, M.R.C.,[1] born on May 15, 2012. The affidavit was signed by Nicole Crockett. In the affidavit, Ms. Crockett explains that, shortly after her marriage to "Pletz," she received a phone call from Ms. Castle demanding child support for M.R.C., who Ms. Castle claimed was "Pletz's" biological child. After DNA testing confirmed the allegation, the Crocketts began visiting with M.R.C. when allowed and paying child support. The affidavit details numerous alleged lies Ms. Castle told, Ms. Castle's evasive behavior, odd bruising on M.R.C., and neglect of the children the Crocketts witnessed while in Ms. Castle's home. The affidavit concludes with the following observations:

> After having a chance to reflect and review the information as well as the new information and pictures from the past, my husband and I are convinced there is a pattern of a child abuse, lack of supervision, poor parental judgement [sic], and we truly have doubts of [the Petitioner]'s involvement in the case of [the victim]. With that being said, our doubts of [the Petitioner] involvement resides on facts of the past pictures before [the Petitioner] knew [Ms. Castle] showing bruising and marks on [the victim] that are extremely similar to [M.R.C.]'s marks. Sadly there are the pictures of [the victim]'s autopsy pictures that were able to be viewed and compared that measure the same size and patterns of [M.R.C.]'s bruises/marks. It truly seems as though [Ms. Castle] has slipped through another situation to where the children are the victims.

On May 25, 2016, the trial court issued an ordered denying the petition as untimely. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner argues that the trial court erred when it dismissed his petition for a writ of error *coram nobis* because newly discovered evidence entitles him to relief. The Petitioner submits that he could not have filed his petition within the one-year statute of limitations because the evidence did not become discoverable until 2015. The State responds that the trial court correctly dismissed the Petitioner's claim as untimely, and the stated grounds for relief do not constitute "newly discovered evidence."

Tennessee Code Annotated section 40-26-105 (2012) provides:

---

[1] It is the policy of this court to refer to minors by their initials only.

There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith. . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

It is well-established that the writ of error *coram nobis* "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ rests within the sound discretion of the *coram nobis* court. *See State v. Hart*, 991 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

A petition for a writ of error *coram nobis* must be filed within one year of the judgment becoming final in the trial court. T.C.A. § 27-7-103. This statute of limitations "is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010); *see Mixon*, 983 S.W.2d at 670 ("[W]e reject the contention . . . that the statute does not begin to run until the conclusion of the appeal as of right proceedings."). In the present case, the judgment became final in May 2010. The Petitioner did not file this petition for a writ of error *coram nobis* until April 5, 2016, more than five years later.

The one-year statute of limitations for a petition for writ of error *coram nobis* may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. *Harris*, 301 S.W.3d at 145. In determining whether the statute should be tolled, the court must balance a petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. *Id*. Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). The *Burford* rule requires three steps:

(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the

grounds are "later arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 299, 301 (Tenn. 1995). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S .W.3d 272 (Tenn. 2000). Discovery of or ignorance to the existence of a claim does not create a "later-arising" claim. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

As an initial matter, the writ of error *coram nobis* is unavailable to attack the Petitioner's guilty-pleaded convictions. *Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016). (holding "that a guilty plea may not be collaterally attacked pursuant to the *coram nobis* statute"). The *Frazier* court held that the language of *error coram nobis* statute in Tennessee clearly refers to newly discovered evidence relating to matters which were litigated at trial. *Frazier* states that the plain and ordinary meaning of the term "litigated on [or at] the trial" in the context of criminal prosecutions refers to a contested proceeding involving the submission of evidence to a fact-finder who then must assess and weigh the proof in light of the applicable law and arrive at a verdict of guilt or acquittal. The *Frazier* court held that a guilty plea proceeding is a non-adversarial proceeding to which the *error coram nobis* statute is simply inapplicable.

In this case, however, we have a "best interest" or *Alford* plea. The *Frazier* court, in a footnote, addressed situations involving *Alford* pleas as follows:

> Although uncommon, criminal defendants also may plead guilty while maintaining that they did not commit the crime charged. Such pleas are often referred to as "Alford pleas" based on the United States Supreme Court case, *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford,* our nation's high court held that a defendant who professed his innocence could nonetheless enter a constitutionally valid guilty plea when the defendant "intelligently concludes that his interests require entry of a guilty plea." *Id*. at 37, 91 S.Ct. 160. Our Rules of Criminal Procedure refer to such pleas as "nolo contendere" pleas. Tenn. R. Crim. P. 11(a)(2); *see also State v. Crowe*, 168 S.W.3d 731, 743 (Tenn. 2005). While we recognize that a criminal defendant who enters an *Alford* plea may have a stronger public policy argument than other criminal defendants for the right to seek error *coram nobis* relief, the issue remains one of a policy judgment which is within the province of the legislature, not this Court.

*Frazier*, 495 S.W.3d at 250, n. 1. In our view, although the *Frazier* case does not involve an *Alford* plea, based on the last sentence in the *Frazier* footnote, our Supreme Court would apply the same reasoning it employed in *Frazier* to hold that a writ of *error coram nobis* is not available to a petitioner who enters an *Alford* plea. An *Alford* plea proceeding is neither contested nor adversarial. It is logical that if a guilty plea hearing does not constitute a trial for the purposes of the error *coram nobis* statute, then neither does an *Alford* plea hearing.

Moreover, the affidavit submitted by the Petitioner does not constitute newly discovered evidence. The evidence of M.R.C.'s abuse is not "newly discovered," rather it is evidence that did not exist at the time the Petitioner entered his *Alford* plea. M.R.C. was not born until 2012, well after the Petitioner's 2009 indictment and 2010 guilty plea. As it relates to an allegation of Ms. Castle's poor parenting, the record indicates that the Petitioner was aware of Ms. Castle's parenting through his relationship with her.[2] Evidence that Ms. Castle continued to fail to properly care for her subsequently born children is not "newly discovered" evidence nor is it evidence of the Petitioner's actual innocence. As such, we can not conclude that due process considerations require a tolling of the statute of limitations in this case. Therefore we agree with the trial court's conclusion that the petition in this case is untimely. Accordingly, we conclude that the trial court did not abuse its discretion in summarily denying the petition for writ of error *coram nobis*.

### III. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[2] We note that Ms. Castle was indicted on charges of aggravated child abuse at the same time the Petitioner was indicted.