IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 1, 2020 Session

**STEVEN SKINNER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 00-5699, 00-5700      James M. Lammey, Judge**

_____

**No. W2020-00385-CCA-R3-ECN**

_____


The Petitioner, Steven Skinner, filed a petition for writ of error coram nobis seeking relief from his two convictions for first degree premeditated murder and his consecutive life sentences. The trial court dismissed the petition because it was not timely filed, not entitled to due process tolling of the statute of limitations, and otherwise nonmeritorious. After a thorough review of the record, we affirm the dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Sharon Fortner, Memphis, Tennessee, for the appellant, Steven Skinner.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Petitioner seeks coram nobis relief on the basis that, in 2017, he discovered certain documents, including statements made by witnesses in 1999, which would have impeached the credibility of the State's witnesses and which may have required a witness's testimony to be corroborated as accomplice testimony. The Petitioner asserts that his trial counsel did not have access to these materials at trial. Because the petition was not accompanied by affidavits to establish that the documents are newly discovered

or that the Petitioner is entitled to due process tolling, we conclude that the trial court did not err in dismissing the petition.

The Petitioner was convicted of two counts of first degree premeditated murder and sentenced to two consecutive life sentences for his role in orchestrating the murder of victims Mr. Sid Towns and Mr. Omar Stokes, who were responsible for a large financial loss to the Petitioner's gang, the Gangster Disciples. *State v. Steve Skinner* (*Skinner I*), No. W2003-00887-CCA-R3-CD, 2005 WL 468322, at *1 (Tenn. Crim. App. Feb. 28, 2005), *perm. app. denied* (Tenn. June 27, 2005). The testimony of three witnesses present at the shooting, two of whom were acknowledged gang members and participants in the murders, linked the Petitioner to the offenses. *Id.* at *2-9. The Petitioner was also implicated through a hat left at the crime scene and the testimony of a witness who asserted that the Petitioner had attempted to hire him to commit the murders shortly before the crimes. *Id.* at *3, 6, 9-10, 13.

The murders were planned by Mr. Marcus Boyd, the highest-ranking Gangster Disciple in Memphis, Mr. Carlos Wardlow, who was the gang's "Governor" for south Memphis, and the Petitioner, who was an "Assistant Governor." *Id.* at *4. Witnesses agreed that the Petitioner drove with Mr. Marcus Boyd and Mr. Wardlow to an auto body shop owned by one victim. *Id.* at *3, 6, 8. Mr. Marcus Boyd and Mr. Wardlow entered the shop with the two victims. *Id.* When the four emerged, Mr. Michael Brown and Mr. Calvin Boyd, who had been charged with lying in wait for the victims, shot and killed both victims after the Petitioner signaled them to shoot by flashing the vehicle's lights. *Id.* at *3, 6.

Mr. Wardlow testified at trial that although he initially participated in the planning of the murders with Mr. Marcus Boyd and the Petitioner, he had succeeded in convincing Mr. Marcus Boyd to cancel the shooting based on the suggestion that police would be able to trace recent calls between Mr. Marcus Boyd and one of the victims. *Id.* at *5-6. Mr. Wardlow testified that, as they arrived at the location chosen for the murder, he shouted out the car window to Mr. Calvin Boyd and Mr. Brown that the killing was canceled. *Id.* at *6. He testified that when he emerged from the shop, he saw lights flashing in the vehicle occupied by the Petitioner, the victims were shot, and all involved fled. *Id.*

Mr. Brown testified that he and Mr. Calvin Boyd were lying in wait and observed the victims enter the building with Mr. Marcus Boyd and Mr. Wardlow. *Id.* at *3. The Petitioner then exited his vehicle and told them to shoot the victims when he flashed the vehicle's lights, instructing them to disregard any contrary directions. *Id.* Although Mr. Marcus Boyd, as he exited the building, made a hand signal conveying that the shooting should not take place, Mr. Brown and Mr. Calvin Boyd killed the victims when the

- 2 -

Petitioner flashed the vehicle's lights. *Id.* Mr. Brown and Mr. Wardlow testified that the Petitioner dropped his designer hat, and a designer hat was recovered from the scene. *Id.* at *3, 6, 13.

Mr. Brown and Mr. Calvin Boyd were transported to and from the scene of the shooting by Mr. Jason Coleman, whose awareness of the intended crimes was disputed. *Id.* at *3, 5, 8. Mr. Coleman testified that he did not know that any crime was contemplated when he was asked to drive the men to the auto body shop. *Id.* at *7, 9. Mr. Brown stated that Mr. Coleman was woken up and told to drive the car and ask no questions, but he also testified that Mr. Coleman was affiliated with the gang. *Id.* at *3. The appellate opinion notes that "inconsistencies" regarding Mr. Coleman's involvement were revealed during the cross-examination of Mr. Brown. *Id.* Mr. Coleman confirmed that the shooting took place and testified that he did not see any flashing lights. *Id.* at *9. Mr. Randall Jackson testified that the Petitioner attempted to hire him to commit murder at the time in question but that he refused to become involved. *Id.*

The Petitioner appealed his convictions, challenging his sentences and the sufficiency of the evidence, particularly in light of his assertion that Mr. Coleman's testimony was accomplice testimony requiring corroboration. *Id.* at *1. This court determined that Mr. Coleman's status as an accomplice was a factual matter for the jury's determination, that the evidence was sufficient, and that there was no error in sentencing. *Id.* at *11, 13, 14, 16.

The Petitioner filed a petition for post-conviction relief, asserting he had received ineffective assistance from his counsel and arguing in particular that counsel "failed to review the transcripts of his co-defendant[s'] trials for purposes of preparing for impeachment on cross-examination." *Steven D. Skinner v. State* (*Skinner II*), No. W2009-00307-CCA-R3-PC, 2010 WL 4188314, at *2 (Tenn. Crim. App. Oct. 22, 2010), *perm. app. dismissed* (Tenn. Feb. 8, 2011). Those involved in the crimes, including the Petitioner, were simultaneously prosecuted for various crimes in federal court. *Id.* at *2, 3. The Petitioner asserted that trial counsel's preparation was deficient because he "could not articulate the status of the co-defendant[s' federal] cases that were resolved in advance of the petitioner's case." *Id.* at *4. This court noted that, on the contrary,

counsel testified that he had access to this material and reviewed all of it prior to trial. He also had conversations with the federal prosecutor about the case and subpoenaed him to court in case he needed his testimony. He ultimately made a strategic decision not to use the prosecutor's testimony because he did not know what additional, harmful information he might testify to in front of the jury.

*Id.*

Following the denial of his post-conviction appeal and the denial of a federal habeas corpus petition, the Petitioner made an Open Records Request ("ORR") to the Shelby County District Attorney's office, and in February 2017, the Petitioner received responsive materials. *Steven Skinner v. State* (*Skinner III*), No. W2017-01797-CCA-R3-ECN, 2018 WL 3430339, at *1 (Tenn. Crim. App. July 16, 2018), *perm. app. denied* (Tenn. July 16, 2018). On April 10, 2017, he filed a petition for writ of error coram nobis asserting that Mr. Brown and Mr. Wardlow had given statements to federal prosecutors stating that Mr. Marcus Boyd and not the Petitioner orchestrated the murders. *Id.* On appeal, this court concluded that the petition was properly dismissed because it was filed outside the limitations period and because the Petitioner did not establish due process tolling. *Id.* at *3. In denying relief, this court observed,

> According to the record, it appears that this information was made available to trial counsel before trial because these statements were taken before trial and were in the District Attorney's file. During Petitioner's post-conviction hearing, trial counsel testified that he "had access to all the material and reviewed all of it prior to trial." Trial counsel also testified that he "had conversations with the federal prosecutor about the case and subpoenaed him to court in case he needed his testimony." Petitioner made no allegations that the federal prosecutor withheld these statements or that trial counsel made a specific request for them that was ignored…. From trial counsel's testimony at the post-conviction hearing, it appears that information from the federal prosecutor was available, but strategically not used, at trial. Therefore, the evidence which Petitioner claims is "newly discovered" was not later arising.

*Id.* at *2 (citations omitted). This court elaborated that the Petitioner had not demonstrated the exercise of reasonable diligence in filing his petition because "trial counsel was already in possession of the [federal] materials before trial." *Id.* at *3.

In an effort to introduce contrary proof on the subject of whether the ORR documents had previously been disclosed, were accessible to trial counsel, or were in the possession of trial counsel, the Petitioner filed the instant second petition for writ of error coram nobis on May 2, 2019. In the pro se petition, he asserted that he had found newly discovered evidence which would have affected the outcome of his trial. The Petitioner noted that his prior petition for writ of error coram nobis based on the ORR evidence was dismissed and that the dismissal was affirmed on the basis that trial counsel was, at the time of trial, already in possession of the evidence. In the 2019 petition, the Petitioner summarized the newly discovered evidence as a telephone call with trial counsel on

August 16, 2018, during which trial counsel allegedly informed him that trial counsel was not in possession of the ORR documents at the time of trial, that trial counsel would have used the documents during trial had he had access to them, and that the documents showed that the Petitioner was innocent.

Through counsel, the Petitioner filed an "Amended and Supplemental" petition for writ of error coram nobis. The Petitioner identified certain records which he obtained in 2017 through his Open Records Request and which he contended were exculpatory. These records include Mr. Coleman's testimony from Mr. Marcus Boyd's preliminary hearing on December 16, 1999; an affidavit of complaint charging Mr. Coleman with two counts of first degree murder; a record of Mr. Coleman's arrest for two counts of first degree murder on October 6, 1999; statements made to the Federal Bureau of Investigation ("FBI") by Mr. Coleman; statements made to the FBI by Mr. Wardlow; an affidavit of complaint charging Mr. Marcus Boyd with two counts of first degree murder; and an advice of rights form and statement to the FBI made by Mr. Brown. The Petitioner asserted that some of the ORR documents showed that the State's failure to prosecute Mr. Coleman was a ruse intended to defeat his accomplice status and the corroboration requirement. The Petitioner also asserted that the failure to produce the documents was a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), because the documents were exculpatory in that the witnesses made "contradictory statements." He further contended that the statements made to federal prosecutors were inconsistent with trial testimony.

Neither the pro se petition nor the "Amended and Supplemental" petition was accompanied by affidavits or other proof. The ORR documents that were the subject of the petitions were also not appended to the petitions. The petitions likewise failed to detail the alleged inconsistencies between witness statements and witness testimony.

The Petitioner requests this court to take judicial notice of its prior records, and the challenged documents are part of the Petitioner's first coram nobis petition. The Petitioner asserts in his appellate brief that the statements of Mr. Coleman to the FBI were internally inconsistent because Mr. Coleman initially denied any involvement with the crime or his presence at the scene and because one statement, which focused on events after the shooting, did not reiterate the facts from a previous statement. The Petitioner also asserts in his brief that the statements of Mr. Coleman and Mr. Wardlow conflicted with the testimony of other witnesses.

The State moved to dismiss the petition for error coram nobis, asserting that it was not timely filed, that the Petitioner was not entitled to due process tolling, that the claim was patently nonmeritorious because the issue of Mr. Coleman's status as an accomplice had been litigated, that the *Brady* issue could not properly be brought in a petition for

error coram nobis, and that there was no basis to conclude that the evidence may have led to a different result.[1]

The trial court heard argument on the motion, during which the Petitioner's attorney stated that trial counsel would be willing to testify in the hearing. The trial court dismissed the petition without allowing the introduction of proof, concluding that there was no basis for tolling the statute of limitations and that the evidence itself would not entitle the Petitioner to error coram nobis relief. The trial court found that the current coram nobis petition was based on the same documents as the previous coram nobis petition and that there was nothing presented on the face of the petition which would cause the court to come to a different conclusion in the Petitioner's attempt to relitigate the initial petition. The trial court noted the absence of any affidavits accompanying the petition, and it dismissed the petition. The Petitioner appeals.

## ANALYSIS

On appeal, the Petitioner asserts that the trial court erred in dismissing his petition without a hearing and that it erred in determining that due process tolling did not apply. We conclude that the petition was properly dismissed because it failed to include affidavits or other documents establishing that the claim was entitled to due process tolling. Insofar as the Petitioner asserts his due process rights under *Brady* have been

---

[1] We note that in its amended response, the State also made the rather serious and apparently groundless insinuation that trial counsel's testimony at the post-conviction hearing may have been "untruthful." Regarding the federal trials of the co-defendants, trial counsel testified at the post-conviction hearing that he "had access to all the material and reviewed all of it prior to trial." *Skinner III*, 2018 WL 3430339, at *2. The Petitioner asserted that subsequently, in 2018, trial counsel told him in a telephone call that he did not in fact have the statements of the co-defendants to the FBI or the other documents which are the basis of the coram nobis action. The State wrote in its motion to dismiss that "it appears that petitioner's trial counsel is now asserting that his prior sworn testimony provided at the post-conviction hearing was either inaccurate *or untruthful*." (Emphasis added.) Obviously, if trial counsel failed to discover the evidence or if the evidence was withheld as the Petitioner asserts, *see, e.g.*, *State v. Jackson*, 444 S.W.3d 554, 597 (Tenn. 2014) (prosecution's *Brady* violation in Shelby county murder trial warranted new trial); *Johnson v. State*, 38 S.W.3d 52, 63 (Tenn. 2001) (Shelby county prosecutors improperly withheld exculpatory evidence at a capital sentencing hearing), trial counsel would have been ignorant of the fact that there were materials he had not reviewed. There is nothing in the record to support the conclusion that trial counsel knowingly gave false testimony. Accordingly, we disapprove of Shelby County Assistant District Attorney General's characterization of the petition as alleging "that trial counsel essentially perjured himself during the post-conviction proceedings." The petition alleges nothing of the kind.

- 6 -

violated, the Tennessee Supreme Court has held that a coram nobis petition is not the proper avenue to seek relief. *Nunley v. State*, 552 S.W.3d 800, 820 (Tenn. 2018).

Generally, the decision to deny a petition for writ of error coram nobis is entrusted to the trial court's discretion. *Payne v. State*, 493 S.W.3d 478, 484 (Tenn. 2016). We review de novo questions regarding whether a claim is barred by the statute of limitations. *Nunley*, 552 S.W.3d at 830. We likewise review de novo mixed questions of fact and law regarding whether a claim is entitled to due process tolling. *Id.*

The writ of coram nobis "will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." T.C.A. § 40-26-105(b). The writ is limited to "errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding." *Id.* Coram nobis relief is an "extraordinary remedy known more for its denial than its approval." *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). "The evil that the coram nobis statute is aimed at remedying is a conviction based on materially incomplete or inaccurate information." *Payne*, 493 S.W.3d at 486. Coram nobis relief is available only when a court determines that the new evidence may have led to a different result. T.C.A. § 40-26-105(b). In other words, the court examines "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *Nunley*, 552 S.W.3d at 816 (quoting *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007)). Generally, a petitioner cannot premise relief on evidence "which is merely cumulative or 'serves no other purpose than to contradict or impeach.'" *Wlodarz v. State*, 361 S.W.3d 490, 499 (Tenn. 2012) (quoting *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995)), *abrogated on other grounds by Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016).

Relief for error coram nobis is only available "[u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time." T.C.A. § 40-26-105(b). Furthermore, the petition for the writ must be filed "within one (1) year after the judgment becomes final." T.C.A. § 27-7-103. The parties do not dispute that the petition was not filed within the limitations period. However, "[t]o accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error *coram nobis* seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period." *Nunley*, 552 S.W.3d at 828-29. Such a claim for due process tolling "must be pled with specificity." *Id.* at 829.

- 7 -

"To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims.... A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief."

*Id.* (quoting *Harris v. State*, 301 S.W.3d 141, 154 (Tenn. 2010) (Koch, J., concurring in part and concurring in the result), *majority opinion overruled by Nunley*, 552 S.W.3d at 828).

A petition for error coram nobis is "subject to dismissal on the face of the petition, without discovery or an evidentiary hearing, and even prior to notification to the opposing party." *Nunley*, 552 S.W.3d at 825. Traditionally, a trial court has been expected to dismiss a petition which is insufficient on its face. *Id.* While some petitions cannot be resolved on the face of the petition, the court need not hold a hearing unless it determines a hearing is essential. *Id.* at 826. Accordingly, the contents of the written petition are of the "'utmost importance.'" *Id.* (quoting *Harris*, 301 S.W.3d at 154 (Koch, J., concurring)). "'Judges anticipate that the petition itself embodies the best case the petitioner has for relief from the challenged judgment. Thus, the fate of the petitioner's case rests on the ability of the petition to demonstrate that the petitioner is entitled to the extraordinary relief that the writ provides.'" *Id.* (quoting *Harris*, 301 S.W.3d at 150 (Koch, J., concurring)).

The petition itself must set forth the facts and law which would entitle the petitioner to relief. *Harris*, 301 S.W.3d at 150 (Koch, J., concurring); *see Hart*, 911 S.W.2d at 374-75. The petition must likewise detail how the petitioner was without fault in failing to present the evidence and the nature of the relief sought. *Harris*, 301 S.W.3d at 151 (Koch, J., concurring). The petition must also be verified under oath. *Id.* A petition is subject to dismissal if it does not recite: (a) the grounds and the nature of the newly discovered evidence; (b) why the admissibility of the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial; (c) that the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (d) the relief sought by the petitioner. *Hart*, 911 S.W.2d 371, 374-75.

"A motion or petition seeking a new trial based on newly discovered evidence must also be supported by affidavits." *Harris*, 301 S.W.3d at 152 (Koch, J., concurring).

The affidavits supporting the grounds for relief "should be filed in support of the petition or at some point in time prior to the hearing." *Hart*, 911 S.W.2d at 375. The affidavits should be relevant, material, germane, and based on personal knowledge. *Id.* "Affidavits of the witnesses through whom the newly discovered evidence is sought to be introduced must explain the materiality of the evidence and must state that the evidence was not communicated to the prisoner or his or her trial counsel prior to the original trial." *Harris*, 301 S.W.3d at 153 (Koch, J., concurring).

Here, the Petitioner never submitted affidavits to support the claims in the petition. More particularly, there was no affidavit from the Petitioner's trial counsel regarding whether the ORR documents were available to him at the time of trial. Without such an affidavit, the trial court could not have concluded that the evidence was newly discovered, that it was later arising, that the Petitioner was without fault in timely presenting the evidence, or that the Petitioner was entitled to due process tolling. Accordingly, the petition was properly dismissed on this basis. *See Kelvin Reed v. State*, No. W2017-02419-CCA-R3-ECN, 2018 WL 4191228, at *5 (Tenn. Crim. App. Aug. 31, 2018) (affirming dismissal when the petitioner failed to attach affidavits from individuals with personal knowledge); *Bo W. Prendergast v. State*, No. M2013-02869-CCA-R3-ECN, 2015 WL 9488423, at *8 (Tenn. Crim. App. Dec. 29, 2015) (trial court did not err in dismissing the petition when the petitioner had failed to attach affidavits after one year); *Junior Lenro Smothers v. State*, No. W2011-02684-CCA-R3-PC, 2012 WL 6475742, at *1 (Tenn. Crim. App. Dec. 13, 2012) (the alleged recantation on social media of the testimony of Victim A (one of two victims) did not support granting the petitioner a hearing with regard to the conviction related to Victim A when the petitioner did not provide Victim A's affidavit).

We further note that the Petitioner has already filed a coram nobis petition based on the same claims, that the previous petition was fully litigated and provided him with a meaningful opportunity to present his claims, and that he has now "merely re-package[d] th[e] same claim in a new form." *Melissa Barnett v. State*, No. E2014-02396-CCA-R3-ECN, 2015 WL 5601537, at *3 (Tenn. Crim. App. Sept. 23, 2015). At the time he filed his original coram nobis petition, the Petitioner could, through the exercise of diligence, have consulted trial counsel regarding the availability of the ORR documents at trial. *See id.* (denying relief to a petitioner when she had previously filed a petition for error coram nobis on the same grounds and merely appended a newly obtained affidavit, which she could in diligence have previously obtained, to the new petition). We conclude that the trial court did not err in dismissing the petition.

**CONCLUSION**

Based on the foregoing analysis, the dismissal of the petition is affirmed.


_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE