# IN THE SUPREME COURT OF TENNESSEE
November 3, 2021 Session[1]

## STATE OF TENNESSEE v. DOUGLAS E. LINVILLE

### Appeal by Permission from the Court of Criminal Appeals
### Circuit Court for Hardin County
### No. 18-CR-145      Charles C. McGinley, Judge

_____

### No. W2019-02180-SC-R11-CD

_____

A jury convicted Douglas E. Linville of multiple drug offenses that occurred in a drug-free zone, in this case within 1,000 feet of a city park. Because the offenses occurred in a drug-free zone, the trial court imposed sentences that required full service of at least the minimum term within the appropriate sentencing range prior to release. See Tenn. Code Ann. § 39-17-432(c) (2014) (amended 2020 & 2022).[2] On appeal, the Court of Criminal Appeals rejected challenges to the convictions. However, consistent with Mr. Linville's brief, the intermediate appellate court noted that the judgment for one of the convictions erroneously referred to the controlled substance at issue—Xanax or Alprazolam—as Schedule III when it was actually Schedule IV. In so noting, the court also concluded sua sponte that the felony class reflected on the judgment for that conviction was incorrect because Tennessee law required a one-class enhancement for an offense that occurred in a drug-free zone. See Tenn. Code Ann. § 39-17-432(b)(1) (2014). We accepted Mr. Linville's appeal. Based on our review of the relevant statutory provisions, we conclude that because the drug-free zone in this case related to a public park, the offenses were not

---

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

[2] We are called upon in this appeal to examine the history of the drug-free zone statute. The original version of the statute was enacted in 1995. In this opinion, citations to that version will be accompanied by the parenthetical date of the supplement code volume that immediately followed enactment (Supp. 1995). The statute was amended in 2005. Citations to that version—effective at the time of the offenses in this case—will be accompanied by the parenthetical date of the bound code volume that immediately preceded the offenses (2014). The statute was amended again in 2020, in part to afford the trial court greater sentencing discretion. Act of June 17, 2020, ch. 803, 2020 Tenn. Pub. Acts. 988–90 (codified at Tenn. Code Ann. § 39-17-432 (Supp. 2021)). The 2020 amendment applied to offenses that occurred on or after September 1, 2020. Act of June 17, 2020, ch. 803, § 12, 2020 Tenn. Pub. Acts 989. However, the statute was amended once again in 2022 to create a procedure whereby defendants convicted of offenses that occurred before September 1, 2020, are eligible for resentencing under the provisions enacted by the 2020 amendment. Act of April 11, 2022, ch. 927, §§ 1-2, 2022 Tenn. Pub. Acts ___. The 2022 amendment is not at issue in this appeal, and we express no opinion on Mr. Linville's suitability for resentencing under the 2022 amendment.

subject to a one-class enhancement. We, however, further conclude that the offenses were subject to the requirement to serve in full at least the minimum sentence for the appropriate range prior to release. Accordingly, we reverse the decision of the Court of Criminal Appeals in part, affirm the judgments of the trial court, and remand this matter to the trial court for correction of a clerical error in one judgment.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Reversed in Part;**
**Remanded to the Circuit Court**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and SHARON G. LEE and HOLLY KIRBY, JJ., joined.

Kendall Stivers Jones (on appeal), Franklin, Tennessee; and Matthew C. Edwards (at trial), Bolivar, Tennessee, for the appellant, Douglas E. Linville.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Katharine K. Decker, Senior Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Vance W. Dennis and Jennifer Hedge, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

In this appeal, we must interpret statutory provisions that govern sentencing for certain drug offenses that occur within what are commonly known as drug-free zones. More than twenty-five years ago, our General Assembly took steps to provide students with a learning environment free from dangers associated with drug activity. See Act of May 26, 1995, ch. 515, 1995 Tenn. Pub. Acts 918–19 ("the 1995 Act"). To that end, the legislature delineated an area around elementary, middle and secondary schools—referred to as drug-free school zones—in which the commission of certain drug offenses would merit heightened criminal penalties. The penalties included: (1) the offense would be punished as if it were one classification higher than it ordinarily would be, and (2) the offender would be required to serve in full at least the minimum sentence within the appropriate range of punishment prior to release. Act of May 26, 1995, ch. 515, § 1, 1995 Tenn. Pub. Acts 918–19.

Ten years later, in 2005, the General Assembly amended the drug-free school zones statute to expand the list of protected places beyond schools to areas around a "preschool, child care agency, or public library, recreational center or park." Act of May 19, 2005, ch. 295, § 2, 2005 Tenn. Pub. Acts 670 ("the 2005 Act"). The question presented in this appeal is whether the General Assembly intended for one, both, or neither of the original two penalty provisions to apply when the drug-free zone relates to the protected places added in 2005.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2018, law enforcement officers searched a Hardin County home pursuant to a warrant. There were five individuals in the home at the time, including Douglas E. Linville ("the Defendant"). The search yielded various controlled substances and drug paraphernalia. Trial testimony established that the home was located within 1,000 feet of the Savannah City Park.

At the conclusion of trial, the jury convicted the Defendant of five drug offenses. Three of the convictions were for possessing various controlled substances, with the intent to deliver, in a drug-free zone.[3] See Tenn. Code Ann. §§ 39-17-417(a)(4), 39-17-432, 39-17-434(a)(4) (2014). The drugs at issue in counts one through three were: (1) less than 0.5 grams of methamphetamine, a Schedule II controlled substance; (2) hydrocodone, a Schedule II controlled substance; and (3) Xanax (or Alprazolam), a Schedule IV controlled substance. The drug-free zone related to the home's location with respect to the Savannah City Park. See id. § 39-17-432(b)(1) (2014) (identifying a drug-free zone, in part, as a location within 1,000 feet of the real property that comprises a "public library, recreational center or park").

For sentencing, the Defendant qualified as a Range III Persistent Offender. The methamphetamine and hydrocodone convictions in counts one and two, respectively, were Class C felonies. Id. § 39-17-417(c)(2)(A) (2014). Accordingly, the applicable sentencing range for the Defendant was ten to fifteen years. Id. § 40-35-112(c)(3) (2014). At the sentencing hearing, the trial court sentenced the Defendant to twelve years on each count, running concurrently.[4] The judgment for each conviction corresponded with the trial court's verbal ruling at the sentencing hearing.

Sentencing for the Xanax conviction in count three reflects some confusion. At the sentencing hearing, the parties mistakenly informed the trial court that the offense was a Class C felony. Thus, at the sentencing hearing, the trial court imposed the same twelve-year sentence for the Xanax conviction as for the methamphetamine and hydrocodone convictions. In fact, however, the Xanax offense was a Class D felony. Id. §§ 39-17-412(c)(2) (Supp. 2017), 39-17-417(e)(2) (2014). For a Class D felony, the applicable sentencing range for the Defendant was eight to twelve years. Id. § 40-35-112(c)(4) (2014). For reasons the record does not reveal—and contrary to the trial court's verbal ruling at the sentencing hearing—the judgment for count three correctly identified the offense as a Class

---

[3] The other two offenses were possession of less than 0.5 ounces of marijuana and use of or possession with intent to use drug paraphernalia. These offenses are not subject to the drug-free zone statute and are not at issue in this appeal.

[4] The trial court ordered the sentences for all five convictions to run concurrent with one another but consecutive to a separate probation violation.

D felony, and it identified the sentence imposed as eight years. However, the judgment incorrectly identified the offense as involving a Schedule III controlled substance instead of a Schedule IV controlled substance.

The judgments for all three convictions reflected that the offense occurred in a drug-free zone. Each of the judgments also identified a mandatory minimum sentence length associated with the offense, ten years for counts one and two, and eight years for count three.

On direct appeal, the Defendant attacked the sufficiency of the evidence and raised an evidentiary issue. In his brief before the Court of Criminal Appeals, the Defendant specifically noted that he was "not raising an issue as to sentencing in this appeal." In two footnotes, however, the Defendant pointed out the confusion surrounding his sentence for the Xanax offense in count three. The Defendant suggested that the Court of Criminal Appeals remand to the trial court for correction of a clerical error.

The Court of Criminal Appeals affirmed the Defendant's convictions. State v. Linville, No. W2019-02180-CCA-R3-CD, 2021 WL 4476681 (Tenn. Crim. App. Mar. 12, 2021), perm. app. granted, (Tenn. Aug. 5, 2021). With respect to the clerical-error issue identified by the Defendant, the Court of Criminal Appeals agreed that "[t]he judgment form should be corrected to reflect that the Defendant was convicted of possessing a Schedule IV substance." Id. at *5. However, citing Tennessee Code Annotated section 39-17-432(b)(1), the court also went on to state:

> Second, the judgment form reflects that the Defendant was convicted of a Class D felony in count three, when he was punished one class higher by the trial court under the drug-free zone statute according to the transcript[.] See T[enn]. C[ode] A[nn]. § 39-17-432(b)(1) (2019) ("A violation of § 39-17-417" occurring "within one thousand feet (1,000') of the real property that comprises . . . a park shall be punished one (1) classification higher than is provided in § 39-17-417(b)–(i) for such violation"). Accordingly, the judgment form should be corrected to reflect that the Defendant was convicted of a Class C felony.

Id. (omission in original).[5] The intermediate appellate court did not note the fact that the judgment reflected an eight-year sentence for count three, which would not be within the

---

[5] From our reading, the transcript of the sentencing hearing does not clearly reflect that the trial court enhanced the sentence for count three by one class based on the drug-free zone statute. Although the State identified that the offenses occurred in a drug-free zone and there was some initial confusion about the class of the methamphetamine offense based on the amount of controlled substance at issue, the principal comments about the drug-free zone statute focused on mandatory minimum sentencing. In fact, the parties correctly informed the trial court that counts one and two were (unenhanced) Class C felonies.

appropriate range for a Class C felony, nor did the court note the discrepancy between the twelve-year term imposed at the sentencing hearing and the eight-year term reflected on the judgment. In addition, the court did not order enhancement of the classification for counts one and two, which were also subject to the drug-free zone statute.

The Defendant sought permission to appeal to this Court. With respect to sentencing, the Defendant identified the issue in his application as: "Whether the Court of Criminal Appeals erred in its statutory interpretation of Tennessee Code Annotated section 39-17-432(b) when it found that a defendant is subject to sentencing at one classification higher than is provided for in section 39-17-417(b)–(i) when the drug-free school zone is created by a park." We granted the Defendant's application solely with respect to the sentencing issue, and the order granting permission to appeal recites the Defendant's statement of the issue nearly verbatim. In his brief before this Court, however, the Defendant complains of his sentence in two respects. The Defendant argues that because the drug-free zone in this case was related to a public park, his Xanax offense was not subject to the one-class enhancement ordered by the Court of Criminal Appeals. The Defendant also argues that because the drug-free zone was related to a public park, he was not subject to the requirement "to serve at least the minimum sentence for the defendant's appropriate range of sentence" prior to release. Tenn. Code Ann. § 39-17-432(c) (2014).

Based on our review of the relevant statutory provisions, we hold that the Court of Criminal Appeals erred by concluding that the Defendant's Xanax conviction was subject to a one-class enhancement. We also hold that, with respect to the three offenses that were subject to the drug-free zone statute, the Defendant is required to serve in full at least the minimum sentence for the appropriate range prior to release, even though the drug-free zone related to a public park.

## II.    ANALYSIS

Pursuant to Tennessee Code Annotated section 39-17-417, it is a criminal offense to knowingly:

> (1)    Manufacture a controlled substance;
> (2)    Deliver a controlled substance;
> (3)    Sell a controlled substance; or
> (4)    Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.

Tenn. Code Ann. § 39-17-417(a)(1)–(4) (2014). Section 39-17-417 goes on to distinguish among various controlled substances, by classification (identified by different

---

In our view, the transcript appears to show that the parties simply mistakenly informed the trial court that count three was also a Class C felony.

"Schedules") or name, and to designate the class of felony associated with an offense involving each, sometimes breaking it down further according to the amount of controlled substance at issue. Id. § 39-17-417(b)–(j) (2014). Under Tennessee law, authorized punishment for the offense can vary depending on certain circumstances surrounding the offense. See, e.g., id. § 39-17-417(k) (2014) (stating that an offense "where the recipient or the intended recipient of the controlled substance is under eighteen (18) years of age shall be punished one (1) classification higher than provided in subsections (b)–(i)"). One of the circumstances that impacts punishment for a violation of section 39-17-417 is whether the offense occurred in a drug-free zone.

## A.  The Drug-Free Zone Statute

As previously mentioned, the General Assembly enacted the predecessor of the drug-free zone statute that applies to the Defendant's offenses in 1995. With passage of the 1995 Act, the General Assembly announced its intent "to create Drug-Free School Zones for the purpose of providing all students in this state an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activity in or around school facilities." Tenn. Code Ann. § 39-17-432(a) (Supp. 1995). A drug-free school zone was identified as "the grounds or facilities of any school" and the area "within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or secondary school." Id. § 39-17-432(b) (Supp. 1995). The 1995 Act created both "enhanced and mandatory minimum sentences . . . for drug offenses occurring in a Drug-Free School Zone." Id. § 39-17-432(a) (Supp. 1995).

The enhanced sentence provision appeared at section 39-17-432(b). The 1995 Act provided that "[a] violation of [section] 39-17-417, or a conspiracy to violate such section, that occurs [in a Drug-Free School Zone] shall be punished one (1) classification higher than is provided in [section] 39-17-417(b)–(i) for such violation." Id. § 39-17-432(b) (Supp. 1995).

The mandatory minimum sentencing provisions appeared at sections 39-17-432(c) to -432(e). Subsection (c) provided:

> Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for such defendant's appropriate range of sentence. Any sentence reduction credits such defendant may be eligible for or earn shall not operate to permit or allow the release of such defendant prior to full service of such minimum sentence.

Id. § 39-17-432(c) (Supp. 1995). Subsections (d) and (e) contained similar provisions specifying that the sentencing laws relative to release eligibility status, parole, and

- 6 -

reduction of prison overcrowding would not authorize the release of a defendant "prior to service of the entire minimum sentence for such defendant's appropriate range of sentence."[6]  Id. § 39-17-432(d), (e) (Supp. 1995).  The 1995 Act also made clear that nothing prohibited a judge from sentencing a defendant "to any authorized term of incarceration in excess of the minimum sentence for the defendant's appropriate range of sentence."  Id. § 39-17-432(f) (Supp. 1995).

Such was the state of Tennessee law for a decade.  In 2005, however, the General Assembly amended the statute.  Act of May 19, 2005, ch. 295, 2005 Tenn. Pub. Acts. 670–72.  The driving force behind the 2005 Act was a desire to expand the drug-free school zone to include the area around a "preschool, child care agency, or public library, recreational center or park."  Act of May 19, 2005, ch. 295, § 2, 2005 Tenn. Pub. Acts. 670.  As such, the 2005 Act amended subsection (a) of Tennessee Code Annotated section 39-17-432, which announced the intent of the General Assembly, primarily to change the nomenclature from "drug-free school zone" to simply "drug-free zone."[7]  Compare Tenn. Code Ann. § 39-17-432(a) (2014), with Tenn. Code Ann. § 39-17-432(a) (Supp. 1995). However, the reference in subsection (a) to the statute's requirements for both "enhanced and mandatory minimum sentences" remained the same as it was under the 1995 Act.  See id. § 39-17-432(a) (2014).

The only other changes associated with the 2005 Act—indeed, the most significant changes—occurred in subsection (b) of Tennessee Code Annotated section 39-17-432. Former subsection (b) was re-designated as (b)(1) and, consistent with the nomenclature change in subsection (a), amended simply to reflect that "[a] violation of [section] 39-17-417, or a conspiracy to violate the section, that occurs [in a drug-free zone] shall be punished one (1) classification higher than is provided in [section] 39-17-417(b)–(i) for such violation."  Id. § 39-17-432(b)(1) (2014) (emphasis added).  New section 39-17-432(b)(1) otherwise remained substantively the same as prior section 39-17-432(b).  The 2005 Act added a new section 39-17-432(b)(2), which established varying fine amounts for each class of felony offense under the statute, from not more than $10,000 for a Class E felony to not more than $100,000 for a Class A felony.  Id. § 39-17-432(b)(2) (2014). Lastly, and most significantly for this appeal, the 2005 Act also added a new section 39-17-432(b)(3), which provided:

A person convicted of violating this subsection (b) who is within the prohibited zone of a preschool, childcare center, public library, recreational center or park, shall not be subject to additional incarceration as a result of

---

[6] Given the similar nature of the three provisions, for ease of reference, we will look mostly to subsection (c) for the remainder of this opinion.

[7] There were, by logical necessity, a few more minor changes to the language in subsection (a) to reflect that the focus of the statute was no longer solely on schools.

this subsection (b) but shall be subject to the additional fines imposed by this section.

Id. § 39-17-432(b)(3) (2014).

The 2005 Act made no changes whatsoever to the mandatory minimum sentencing provisions of the existing statute. See id. § 39-17-432(c) to -432(e) (2014).

### B.    Applicability of One-Class Enhancement

Having set forth the history and applicable provisions of the drug-free zone statute, we turn to the first issue raised by the Defendant. Consistent with his application for permission to appeal to this Court, the Defendant argues that the Court of Criminal Appeals erred when it ordered that the judgment for the Xanax conviction in count three be corrected to reflect the offense as a Class C felony rather than a Class D felony. Looking to section 39-17-432(b)(1), the Court of Criminal Appeals reasoned that because the offense was committed in a drug-free zone—within 1,000 feet of the Savannah City Park—it should have been punished one classification higher than was otherwise provided for in section 39-17-417. State v. Linville, 2021 WL 4476681, at *5 (citing Tenn. Code Ann. § 39-17-432(b)(1)).

The Defendant argues—and the State agrees—that the reasoning of the Court of Criminal Appeals misinterprets the language of section 39-17-432(b). We agree with the parties. Subsection (b) generally provides that a violation of section 39-17-417 that occurred in a drug-free zone "shall be punished one (1) classification higher than is provided in [section] 39-17-417(b)–(i) for such violation." Tenn. Code Ann. § 39-17-432(b)(1) (2014). However, section 39-17-432(b)(3) establishes an exemption, specifying that when the drug-free zone relates to "a preschool, childcare center, public library, recreational center or park," the defendant "shall not be subject to additional incarceration as a result of this subsection (b) but shall be subject to the additional fines imposed by this section." Id. § 39-17-432(b)(3) (2014). Various panels of the Court of Criminal Appeals have concluded that an offense that occurred in a drug-free zone related to the places enumerated in section 39-17-432(b)(3) is not subject to the one-class enhancement otherwise provided for in subsection (b). See, e.g., State v. Garrard, No. W2018-01026-CCA-R3-CD, 2019 WL 3072104, at *7–8 (Tenn. Crim. App. July 12, 2019), perm. app. denied, (Tenn. Dec. 9, 2019); State v. McNeal, No. E2013-00602-CCA-R3-CD, 2013 WL 6187962, at *3 (Tenn. Crim. App. Nov. 25, 2013), perm. app. denied, (Tenn. Apr. 8, 2014); State v. Shaw, No. M2012-01437-CCA-R3-CD, 2013 WL 5310489, at *8 (Tenn. Crim. App. Sept. 20, 2013), perm. app. denied, (Tenn. Dec. 23, 2013). In this case, the Court of Criminal Appeals concluded without significant discussion that the Defendant's Xanax conviction in count three was subject to the one-class enhancement, citing only to section 39-17-432(b)(1). Although the court recognized that the drug-free zone related to a public park, it did not address section 39-17-432(b)(3).

The plain language of section 39-17-432(b)(3) is controlling as to this issue. We have determined that the General Assembly, through section 39-17-432(b)(3), chose not to impose the one-class enhancement set forth in subsection (b)(1) for violations of section 39-17-417 that occur in a drug-free zone when that zone relates to "a preschool, childcare center, public library, recreational center or park." Tenn. Code Ann. § 39-17-432(b)(3) (2014). Accordingly, we conclude that the Court of Criminal Appeals erred by ordering, based on the drug-free zone statute, that the judgment for the Defendant's Xanax conviction in count three be corrected to reflect a Class C felony rather than a Class D felony. We therefore reverse that part of the decision of the Court of Criminal Appeals.

## C. *Applicability of Mandatory Minimum Sentencing*

The Defendant next argues that because the drug-free zone was related to a public park, he was not subject to the requirement "to serve at least the minimum sentence for the defendant's appropriate range of sentence" prior to release. Tenn. Code Ann. § 39-17-432(c) (2014). The record reveals that for the Defendant's convictions in counts one through three (possession with intent to deliver methamphetamine, hydrocodone, and Xanax, respectively), the judgment for each conviction exhibited a check-marked box next to the section on "Release Eligibility for Felony Offense" reflecting that the offense was committed in a "Drug Free Zone." In addition, below the space on the judgment for designating the sentence length, there was a section with a space to designate a "Mandatory Minimum Sentence Length" that contained a reference to various code sections, including "39-17-432 in Prohibited Zone." For counts one and two (methamphetamine and hydrocodone, respectively), the space was filled out to reflect a mandatory minimum sentence length of ten years.[8] For count three (Xanax), the space was filled out to reflect a mandatory minimum sentence length of eight years.[9] Thus, the Defendant's argument that he is not subject to mandatory minimum sentencing would apply to all three of his convictions that were designated as having occurred in a drug-free zone.

In response, the State first argues that the Defendant has waived consideration of this issue. The State points out that the Defendant, in his application for permission to appeal to this Court, framed the issue as "[w]hether the Court of Criminal Appeals erred in its statutory interpretation of Tennessee Code Annotated section 39-17-432(b) when it found that a defendant is subject to sentencing at one classification higher than is provided for in section 39-17-417(b)–(i) when the drug-free school zone is created by a park." Moreover, the substance of the Defendant's application asserts that the drug-free zone

---

[8] As previously mentioned, the appropriate range of punishment for these Class C felonies, given that the Defendant was a Range III Persistent Offender, was ten to fifteen years. See Tenn. Code Ann. § 40-35-112(c)(3) (2014).

[9] The appropriate range of punishment for this Class D felony, given that the Defendant was a Range III Persistent Offender, was eight to twelve years. See Tenn. Code Ann. § 40-35-112(c)(4) (2014).

statute "does not enhance an offense by one classification if the drug-free zone is created by a park," with no mention of any challenge to mandatory minimum sentencing. Clearly, although the application specifically challenges classification enhancement, it does not address mandatory minimum sentencing. The State further points out that the Defendant, in his brief before the Court of Criminal Appeals, specifically stated that he was "not raising an issue as to sentencing in this appeal" other than the clerical error with respect to the Xanax conviction in count three. However, the judgments for counts one through three reflected mandatory minimum sentencing, and thus the Defendant was free to challenge it before the Court of Criminal Appeals.

The State makes a compelling point. We have stated that "issues are properly raised on appeal to this Court when they have been raised and preserved at trial and, when appropriate, in the intermediate appellate courts and when they have been presented in the manner prescribed by [Rule 27 of the Tennessee Rules of Appellate Procedure]." Hodge v. Craig, 382 S.W.3d 325, 334 (Tenn. 2012) (footnote omitted). Similarly, we have recognized that because our scope of review on appeal is typically limited to the issues raised in the application for permission to appeal, "[a] party who fails to adequately raise an issue in a Rule 11 application waives the issue." TWB Architects, Inc. v. Braxton, LLC, 578 S.W.3d 879, 887 (Tenn. 2019). However, we note that the Defendant alternatively has requested that this Court address the issue as plain error. See, e.g., State v. Minor, 546 S.W.3d 59, 65 (Tenn. 2018) (recognizing that the plain error doctrine "affords appellate courts discretion to review unpreserved errors and grant relief when fairness and justice demand"); see also Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not . . . assigned as error on appeal."). Although we agree with the State that the Defendant's application for permission to appeal does not raise mandatory minimum sentencing sufficiently as an issue, we exercise our discretion to address the substance of the Defendant's argument under the plain error doctrine.

Under the plain error doctrine, the court must consider whether:

(1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

State v. Vance, 596 S.W.3d 229, 254 (Tenn. 2020) (quoting Minor, 546 S.W.3d at 67). The defendant bears the burden of establishing all of these elements. State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007). Consequently, the court need not consider all of the elements when it is clear from the record that at least one them cannot be satisfied. Id. Furthermore, to merit relief, "the plain error must be of such a great magnitude that it probably changed the outcome of the trial." State v. Bishop, 431 S.W.3d 22, 44 (Tenn.

- 10 -

2014) (quoting State v. Adkisson, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). Whether the elements of the plain error doctrine have been satisfied is a question of law. State v. Knowles, 470 S.W.3d 416, 423 (Tenn. 2015).

In this appeal, we need consider only the element of whether a clear and unequivocal rule of law was breached. That question presents an issue of statutory construction in this case. Statutory construction entails questions of law. State v. Welch, 595 S.W.3d 615, 621 (Tenn. 2020); State v. Smith, 436 S.W.3d 751, 761–62 (Tenn. 2014). The fundamental role of this Court when construing a statute is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Welch, 595 S.W.3d at 621 (quoting State v. Howard, 504 S.W.3d 260, 269 (Tenn. 2016)). To that end, "we first look to the plain language of the statute to determine the legislature's intent." Frazier v. State, 495 S.W.3d 246, 248 (Tenn. 2016). We give the statute's words their natural and ordinary meaning. Id. (citing Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 526 (Tenn. 2010)). "When those words are clear and unambiguous, we need not consider other sources of information but must simply enforce the statute as written." Id. at 249. "If the language is ambiguous, however, we look to the 'broader statutory scheme, the history of the legislation, or other sources to discern its meaning.'" Smith, 436 S.W.3d at 762 (quoting State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009)).

The Defendant's argument that he is not subject to mandatory minimum sentencing because the drug-free zone in his case was related to a public park focuses primarily on the language of section 39-17-432(b)(3):

A person convicted of violating this subsection (b), who is within the prohibited zone of a preschool, childcare center, public library, recreational center or park shall not be subject to <u>additional incarceration</u> as a result of this subsection (b) but shall be subject to the additional fines imposed by this section.

Tenn. Code Ann. § 39-17-432(b)(3) (2014) (emphasis added). The Defendant argues that "the plain meaning of 'additional incarceration' in subsection (b)(3) clearly encompasses—and therefore prohibits—all forms of additional punishment for violation of the drug-free zone statute near a park," including "both the punishment at one felony classification higher, and the mandatory minimum sentence."

Construing "additional incarceration" in subsection (b)(3) as he does to include both one-class enhancement and mandatory minimum sentencing, the Defendant nonetheless recognizes that the drug-free zone statute addresses enhancement and mandatory minimum sentencing in different subsections. As a result, the Defendant attempts to bolster his construction of "additional incarceration" in subsection (b)(3) by arguing that the language of subsection (c)—particularly the use of "[n]otwithstanding any other law . . . a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum

- 11 -

sentence for the defendant's appropriate range of sentence," id. § 39-17-432(c) (2014) (emphasis added)—does not include section 39-17-432(b), as that section does not qualify as "any other law." Based on this language, the Defendant contends it would be illogical to read subsection (c) as placing a limitation on the exemption from "additional incarceration" contained in subsection (b)(3). In other words, the Defendant argues that the most fitting construction of the drug-free zone statute is that subsection (c) requires mandatory minimum sentencing, except in cases where subsection (b)(3) prohibits additional incarceration.

For its part, the State contends that the Defendant's argument neglects the complete statutory language of the key provision: "shall not be subject to additional incarceration <u>as a result of this subsection (b)</u>." <u>Id.</u> § 39-17-432(b)(3) (2014) (emphasis added). The State argues that a plain reading of the statutory language in its entirety indicates "that subsection (b)(3)'s exemption applies only to additional incarceration that would otherwise be imposed by subsection (b)—that is, punishment at one sentence classification higher." As the State points out—and as the Defendant acknowledges—panels of the Court of Criminal Appeals have rejected the argument now made by the Defendant. <u>State v. Wiggins</u>, No. W2007-01734-CCA-R3-CD, 2009 WL 1362323, at *8 (Tenn. Crim. App. May 15, 2009), <u>perm. app. denied</u>, (Tenn. Dec. 21, 2009); <u>State v. McElrath</u>, No. W2008-00947-CCA-R3-CD, 2009 WL 1285884, at *2 (Tenn. Crim. App. May 6, 2009). In both <u>Wiggins</u> and <u>McElrath</u>, the court reasoned that the plain language of section 39-17-432(b)(3) refers to "additional incarceration as a result of this subsection (b)," and subsection (b) refers only to one-class enhancement, not mandatory minimum sentencing. <u>Wiggins</u>, 2009 WL 1362323, at *8; <u>McElrath</u>, 2009 WL 1285884, at *2.

We conclude that the plain reading of the statutory language reflects that the General Assembly did not alter mandatory minimum sentencing for offenses committed in a drug-free zone by virtue of the 2005 Act. From its inception, the drug-free zone statute announced an intent to require both "enhanced and mandatory minimum sentences." Tenn. Code Ann. § 39-17-432(a) (Supp. 1995). Original subsection (b) contained a one-class enhancement, <u>id.</u> § 39-17-432(b) (Supp. 1995), whereas subsections (c) through (e) contained mandatory minimum sentencing provisions, <u>id.</u> § 39-17-432(c)–(e) (Supp. 1995). The 2005 Act made changes to subsection (b), including a new exemption from one-class enhancement for certain offenses, but it did not alter subsections (c) through (e). Furthermore, as the State points out, new section 39-17-432(b)(3)—which contains the exemption from "additional incarceration"—is "self-limiting." The exemption plainly applies to "additional incarceration <u>as a result of this subsection (b)</u>," id. § 39-17-432(b)(3) (2014) (emphasis added), and the only "additional incarceration" associated with subsection (b) is the one-class enhancement set forth at section 39-17-432(b)(1). We are mindful that "[w]hen statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language." <u>Welch</u>, 595 S.W.3d at 621 (quoting <u>Carter v. Bell</u>, 279 S.W.3d 560, 564 (Tenn. 2009)). Applying that precept, we conclude that the exemption

set forth at section 39-17-432(b)(3) does not extend to the mandatory minimum sentencing requirements of the drug-free zone statute.[10]

Having determined that section 39-17-432(b)(3) does not exempt the Defendant from mandatory minimum sentencing, we conclude that the Defendant is not entitled to plain error relief because he has not demonstrated that a clear and unequivocal rule of law was breached.[11] See, e.g., Vance, 596 S.W.3d at 254 (identifying the elements the defendant must prove to establish plain error). Accordingly, we affirm the judgments of the trial court that require mandatory minimum sentencing for counts one through three based on the drug-free zone statute.

### D. Correction of Clerical Error

Like the Court of Criminal Appeals, we note that the judgment for the Defendant's Xanax conviction in count three contains a clerical error. The judgment identifies the "Conviction Offense Name" as "Poss. of Schedule III w/ Intent to Del in a Drug-Free Zone." Xanax, however, is a Schedule IV controlled substance. Tenn. Code Ann. 39-17-412(c)(2) (Supp. 2017). As a result, although we affirm the judgments of the trial court, we remand for correction of the clerical error in the judgment for the conviction in count three.[12]

### III. CONCLUSION

For the foregoing reasons, we hold that the Court of Criminal Appeals erred by concluding that the Defendant's conviction in count three was subject to a one-class enhancement due to application of the drug-free zone statute. We further hold that the trial court correctly ordered mandatory minimum sentencing for the offenses in counts one through three, all of which were subject to the drug-free zone statute. Accordingly, we

---

[10] We commend counsel for the Defendant and the State for their careful exposition of the legislative history of the 2005 Act and their detailed analysis of its application to the issue presented here, and we certainly appreciate their efforts. Ultimately, however, we conclude that the plain language of section 39-17-432(b)(3) is controlling as to this issue.

[11] Indeed, our analysis reveals that there was no error of law on this issue in this case.

[12] With respect to the sentence for count three, we acknowledge the discrepancy between the twelve-year sentence announced at the sentencing hearing (when the trial court was under the mistaken impression that the offense was a Class C felony) and the eight-year sentence reflected on the judgment (which correctly identified the offense as a Class D felony). However, the trial court ordered the sentences for all counts to run concurrently with each other, and there were no sentences longer in length than those for counts one and two (twelve years each). The appropriate range of sentence for count three, as a Class D felony, was eight to twelve years. Tenn. Code Ann. § 40-35-112(c)(4) (2014). Thus, the Defendant's sentence for count three cannot impact his overall effective sentence. Under these circumstances, we affirm the eight-year sentence reflected on the judgment for count three.

reverse the decision of the Court of Criminal Appeals in part, affirm the judgments of the trial court, and remand for correction of the clerical error in the judgment for count three in accordance with this opinion.

Because the Defendant appears to be indigent, the costs of this appeal are taxed to the State.

_____
JEFFREY S. BIVINS, JUSTICE